## Hinkley *against* Walters.

The statute of defalcation does not, *per se*, apply the demand of one party to that of the other, so as to produce either payment, satisfaction or extinguishment of either. Hence, in an action upon a sealed note, where the defendant pleaded a set-off, to which the plaintiff replied the statute of limitations, the plea was held good, although the evidence of the set-off was a claim of the defendant against the plaintiff, to which he was entitled within the six years.

W. being indebted to J., on a note under seal, J., for a valuable consideration, transferred the note to H. After which, W. purchased a promissory note, not sealed, of J. After the lapse of six years, J., for the use of H., sued W. on his sealed note, and W. pleaded a set-off of J.'s note, to which the plaintiff replied the statute of limitations: *Held*, that W.'s defence failed on both grounds; that the statute was a bar to his set-off, and that J. had transferred his note to H.; and that W. had no notice of such transfer, was immaterial.

ERROR to the common pleas of *Dauphin* county.

Charlotte Johnston, executrix of John Johnston, deceased, for the use of H. W. Hinkley, against Henry Walters.

This was an action of debt upon a note under seal, brought to

August term 1835, to which the defendant pleaded payment and set-off; and to the plea of set-off, the plaintiff replied the statute of limitations.

Plaintiff gave in evidence a note under seal, of which the following is a copy, viz:

" 640 dollars.　Liverpool, April 10, 1820.—On the first day of July next, I promise to pay John Johnson, surviving partner of the late firm of Lanning & Johnson, or order, six hundred and forty dollars, value received.　Witness my hand and seal, ,

　　　　　　　　　　　　" H. WALTERS, [L. S.]"

The defendant then gave in evidence a promissory note of John Johnson and John Lanning, dated 17th of March 1819, for the sum of 600 dollars, payable 1st of October 1819, to the order of John Hollenbach, with the endorsement of John Hollenbach thereon.　It appeared that this note was endorsed to Henry Walters, the defendant, in June 1820.　The defendant also gave in evidence a letter from H. W. Hinkley to Henry Walters, dated 20th of August 1821, in which he demands payment of the note which he then held, and gave notice to Mr Walters that he would not allow him to set off the note of Johnson & Lanning to Hollenbach: and in which he says that Johnson had transferred his (Walters) note to him before he (Walters) had received the note of Johnson & Lanning from Hollenbach.　And also three receipts of John Hollenbach to Henry Walters, of the following dates and amounts:—6th of October 1820, 300 dollars; 21st of May 1821, 320 dollars; 13th of June 1823, 69 dollars.

The plaintiff then gave in evidence the endorsement upon the note of the defendant, H. Walters, as follows:—" Pay the bearer. April 26 1820.　John Johnson, surviving partner."

The plaintiff requested the court to charge the jury on the following points:

1. The note of Lanning & Johnson to J. Hollenbach, for 600 dollars, payable 1st of October 1819, given in evidence by defendant, is barred by the statute of limitations, and the defendant's claim of set-off ought to be rejected.

2. If J. Johnson transferred the note of H. Walters, on which suit is brought, to H. W. Hinkley, the plaintiff, before J. Hollenbach transferred Lanning & Johnson's note to H. Walters, the set-off of defendant can not be allowed; and this is the law, whether H. Walters had notice of the transfer to plaintiff or not.

3. Under the evidence in this cause, the set-off claimed by defendant cannot be allowed.

The court charged the jury that the note given in evidence by the defendant, was not barred by the statute of limitations; and that, if the defendant had no notice of the transfer of his note to the present plaintiff, before he obtained the note of Johnson & Lanning from Hollenbach, the set-off was allowable.

[Hinkley v. Walters.]

*M' Cormick*, for plaintiff in error, cited 2 *Strange* 1271; *Bull. N. P.* 180; 3 *Stark. Ev.* 1317; 1 *Yeates* 391; 11 *Serg. & Rawle* 60; 4 *Whart.* 130; 1 *Rawle* 292.

*Alexander* and *Forster*, contra, cited 2 *Penn. Rep.* 245; 1 *Penn. Rep.* 261; 1 *Rawle* 231; 2 *Rawle* 121; 1 *Rawle* 230; 2 *Penn. Rep.* 2; 16 *Mass. Rep.* 397; 2 *Esp. Cas.* 569; 6 *Law Lib.* 8; 8 *Johns. Rep.* 152; 1 *Eq. Cas. Ab.* 8; 3 *Binn.* 135.

The opinion of the Court was delivered by

KENNEDY, J.—The first question necessary to be decided in this case is, was not the statute of limitations a bar to the defendant's recovering the amount of the note, which he holds and gave in evidence on the trial by way of set-off? And secondly, can the defendant set off the note, if Hinkley became the owner of the bill in suit, before the defendant got the note? This note not being under seal, it is perfectly clear, that if the defendant had brought a suit for the recovery of it, against the personal representative of the drawee, who it appears is dead, at the same time this action was commenced, and the statute of limitations had been pleaded, it would have been a complete bar to a recovery. The court below, however, seem to have entertained the opinion, that the moment the defendant became possessed of the note, by a transfer from Hollenbach, without notice, on his part, that Johnson had, prior to that, transferred the single bill, which he had held against the defendant to Hinkley, for whose use this suit is brought upon it to recover the amount, the bill in suit was thereby extinguished, or paid *pro tanto* in some way; so that no action could be maintained thereafter for the recovery of that portion of the bill, which thus became satisfied, as the court imagined. The court below, however, were mistaken in their opinion as to this: the two demands were just as distinct and independent of each other, after the defendant obtained an assignment of the note, as before, and ever continued to be so. The demand on the part of the plaintiff here, and that on the part of the defendant, having no connection with or relation whatever to each other in their origin, there can be no foundation in equity for the set-off claimed by the defendant; unless something has occurred since that to raise such equity on his part. But it would seem from the evidence, that some six or seven weeks before the defendant obtained or took a transfer of the note, Johnson had parted with the bill in suit to Hinkley for a valuable consideration. Defendant knew the bill he gave Johnson was assignable; and he did not even use the precaution, before he took an assignment of the note, of inquiring of Johnson whether he still retained the bill in suit. Besides, it would appear from the evidence, if I understand it rightly, that he obtained the note, in the first place, of Hollenbach, for the purpose of setting it off against the bill he had given Johnson, which was not quite due then, when

it should come to maturity, and be presented for payment. The defendant obtained the note in June, 1826, and his bill to Johnson fell due on the first day of the ensuing month; during which month Hinkley called on the defendant for payment of the bill, when the latter offered to set off the note against it, which Hinkley positively refused to accede to. At this time the defendant had paid Hollenbach nothing for or on account of the note; nor did he pay any thing till the 6th of October following, when he paid 300 dollars; and again, on the 21st of May 1821, 320 dollars, and finally, he paid the balance of it, 69 dollars 88 cents, on the 13th of June 1823. Thus, it would appear, that he paid for the note after he had full notice of the assignment of the bill against him to Hinkley, who had refused to agree to a set-off. If this be a correct view of the circumstances attending the case, there appears to be no ground in equity for the defendant's claiming the right of set-off. If he has, therefore, any right to claim it at all, it must be at law, under the statute of defalcation. At common law, the parties having mutual demands against each other, may, by their agreement, extinguish them by a set-off; but even the statute of defalcation does not by any operation, *per se*, apply the demand of one party in such case, against that of the other, so as to produce either a payment, satisfaction, or extinguishment of them. It is a right given to the defendant by the statute, when *he is sued*, which he may claim the benefit of, or not, at his election. There is no compulsion on him to make the set-off; for if he pleases he may bring a cross-action. 2 *Smith* 268. That this is the law also in this state, is manifested by the seventh section of the act of the 20th of March 1810, giving to justices of the peace jurisdiction over debts and demands not exceeding one hundred dollars; which enacts that a defendant *sued* before a justice of the peace, for a debt or demand not exceeding one hundred dollars, founded upon a contract, either express or implied, "who shall neglect or refuse to set off his demand, whether founded upon bond, note, penal or single bill, writing obligatory, book account, or damages on assumption, against the plaintiff, which shall not exceed the sum of one hundred dollars, shall be for ever barred from recovering against the party plaintiff in an after suit." It is obvious this enactment would have been unnecessary, had it been understood then that the general law in regard to set-off was in conformity to it. But it has in fact been ever understood and held otherwise. The English statute as to this particular point, is substantially the same with our own; and our decisions on the subject have followed theirs. And though the party, excepting when sued before a justice, has his election to set off his demand or not, as he pleases, yet, by the express terms of the defalcation act, it is only where *he is sued*, that he can make such election, or has it in his power to make a set-off. The words of the act in this respect are, "If two or more dealing together, be indebted to each other upon bonds, bills, bargains, promises, accounts,

or the like, and one of them *commence an action* in any court of this province, if the *defendant* cannot gainsay the deed, bargain, or assumption upon which he is sued, *it shall be lawful for such defendant* to plead payment of all or part of the debt or sum demanded, and give any bond, bill, receipt, account, or bargain in evidence," &c. It is clear, then, that the defendant here never had it in his power, under the act, to make a set-off before he was sued; and although he told the plaintiff before that he would do so, that amounted to nothing. The right of set-off, in such case, is given to the defendant as a substitution for a suit against the plaintiff, in order to obtain a satisfaction of his demand. But if the statute of limitations had run against his demand so as to bar an action for the recovery of it before the plaintiff commenced his suit against him, it is difficult to perceive upon what principle he can claim the right of set-off for the purpose of having his demand, thus barred by the statute of limitations, satisfied. Indeed it seems to be well settled, both in England and here, that if the defendant plead a set-off of such demand, the plaintiff may reply the statute of limitations to it, which will be a bar; or if the defendant, under the plea of the general issue in England, or here under the plea of payment give the plaintiff notice of his intention to give it in evidence, the plaintiff, after it is given in evidence, may object the statute of limitations to it. *Bull N. P.* 181; *Tidd's Prac.* 721; Pennington *v.* Stevens, 2 *Strange* 12, 72; Cooper *v.* Turner, 2 *Stark. Rep.* 497; Hicks *v.* Hicks, 3 *East*, 16; Cranch *v.* Kirkham, *Peake N. Ca.* 121; Jacks *v.* Moore, 1 *Yeates* 391.

But if it be, as the evidence would seem to show it is, that the defendant did not acquire a right to the note, until after Johnson had parted with the bill in suit for a valuable consideration and a fair purpose, there seems to be another objection to the defendant's right of claiming a set-off, independent of the statute of limitations; which is this: that the defendant, as long as Johnson was the owner and holder of the bill in suit against him, had no claim against Johnson to set-off against the bill. The defendant's purchase of the note from Hollenbach, without any notice of Johnson's having parted with the bill against him at the time, can not be likened to, or placed on the same ground of an actual payment of the bill by the defendant to Johnson, without notice that the latter at the time had previously parted with it. Payment is not only, in such case, a direct and immediate extinguishment of the debt, but a duty and an act which the payer had come under an express obligation, entered into with the payee himself, to perform. But a debtor's purchasing a claim against his creditor is not considered, in law, an actual payment; nor is it an act which he is bound to do: and if he chooses to do so, without ascertaining first whether he who was his creditor is still such, there seems to be nothing inequitable in deciding that he must look to the personal responsibility of the party against whom he has purchased the claim, for payment of it.

[Hinkley v. Walters.]

Suppose Hinkley, in this case, before he took a transfer of the bill, had called upon the defendant to know if the bill he had given Johnson was good, it is evident that the defendant then must have said it was, and that he would have to pay it as soon as it should become due. But could it be pretended that Hinkley, if he had taken an assignment of the bill for a valuable consideration immediately upon being so informed by the defendant, could be defeated in recovering the amount of it from the defendant, by the latter's having gone afterwards and purchased the note of Hollenbach, though without knowing that Hinkley held his bill, as the owner of it. If the defendant here had used ordinary precaution before he took the note of Hollenbach, he might have known that Johnson had parted with the bill in suit. The circumstance of the note having become payable some seven or eight months before he took it, ought, if there had been nothing else, to have put him on his guard, and to have induced him to have inquired first of Johnson, whether he would be safe in taking it with a view of setting it off, if he got it, against the bill. Johnson might then have told him that the note was binding upon him, but that he must not take it with the expectation of setting it off against the bill, because he had parted with that to Hinkley, and was no longer the owner of it. If the defendant, without knowing that Hinkley had become the owner of the bill, had been induced in any way, either by Hinkley or Johnson, to have become the purchaser of the note, then there might have been some ground for his claiming an equity that would have preferred him to Hinkley; but as the case appears from the evidence, we can see none. We, therefore, think that the court also erred in their instruction to the jury on this point.

Judgment reversed, and a *venire de novo* awarded.