## First National Bank of Bangor, Appellant, v. Bangor Trust Co.

116

Argued April 16, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Calvin F. Smith* and *T. McKeen Chidsey*, for appellant.—The Bangor Trust Co. was estopped from showing that the resolution of the board of directors of the Bangor Trust Company on April 22, 1925, was different from the resolution as it appeared on the records and minutes of the meeting of April 22, 1925, of the directors of the Bangor Trust Company and as approved by the board of directors at a subsequent meeting: Holden v. Whiting, 29 Fed. 881; Holden v. Hoyt, 134 Mass. 181; Holden v. Phelps, 141 Mass. 456; Moores v. Bank, 111 U. S. 156; Greensburg T. & T. Co. v. Aspinwall-Delafield Co., 266 Pa. 160.

The knowledge which Buzzard and Hess, as president and secretary and treasurer respectively of the Bangor Trust Company, of the assignment of the rights of Philip Hess under the resolution to the First National Bank of Bangor, was not notice to the trust company: Nat. Union Fire Ins. Co. v. Bank, 276 Pa. 212; United Security Life Ins., etc., Co. v. Bank, 185 Pa. 586.

*Aaron Goldsmith,* with him *Kent & Rockwell,* for appellee.—The debtor or party liable on an assigned chose in action is not affected by the assignment until he has notice thereof: Gaullagher v. Caldwell, 22 Pa. 300; Hoverter v. Consedine, 82 Pa. Superior Ct. 294; Phillips's Est., 205 Pa. 515; Rider v. Johnson, 20 Pa. 190; Miller v. Kreiter, 76 Pa. 79.

Where a corporation had absolutely nothing to do with the transaction, but its officers were acting in their own interests, and where the proceeds of the transaction were for the benefit of the officers personally, no knowledge of the transaction gained by these officers in the pursuit of their own business, and as part of the scheme to defraud the trust company of which they were officers, can be imputed to the trust company: Gunster v. Illuminating Co., 181 Pa. 327; United Security Life Ins. Co. v. Bank, 185 Pa. 586; Dominion Trust Co. v. Hildner, 243 Pa. 253; Nat. Union Fire Ins. Co. v. Bank, 276 Pa. 212.

OPINION BY MR. JUSTICE SADLER, May 13, 1929:

The First National Bank of Bangor filed a bill to compel the Bangor Trust Company to account for monies received from the State of New York in payment for construction of a highway, built under contract with the Masterson Construction Corporation. It is claimed that the defendant collected the funds as trustee for the plaintiff, assignee of the sums remitted. The court below held relief could not be granted under the facts presented, dismissed the complaint, and, from the final de-

cree entered, this appeal was taken. In reaching this conclusion, the evidence was reviewed by the trial judge, who filed a carefully considered opinion, based on findings, many of which are not excepted to. Where the contrary is true, ample competent testimony to support its determination is found in the record. All of the exceptions presented by plaintiff were overruled by the court in banc. A brief review of the evidence is necessary to an understanding of the questions involved.

The president of the Bangor Trust Company, defendant, at the time when the events now the subject of controversy took place, was Buzzard, and its secretary and treasurer Floyd Hess. The two named were also officers of, and deeply interested in, the construction corporation, which had entered into a contract with the State of New York for the building of a highway. Taking advantage of their position, they diverted funds of the trust company in excess of $100,000 to the uses of the private concern. As a result of interference by the banking department, those interested in the institution were compelled to raise a large sum to cover the improper advances made. To protect it in part, the road building concern, on September 24, 1924, assigned to the trust company all monies due from New York by reason of its contract, of which transfer the contractee was advised, and the direction so to pay accepted. Thereafter, until the completion of the highway, all sums due to the Masterson Company were turned over to the then named assignee. Early in 1925, Buzzard and Hess, to secure more cash so that the construction company, personally controlled by them, could proceed with its building, "fraudulently used and misapplied [additional] funds" of the defendant for this purpose, as found by the court, amounting to about $42,000.

Efforts were made by these officials to obtain money on their own account so that the sums wrongfully diverted could be replaced. For this purpose, they personally applied, in April, 1925, to the First National

Bank of Bangor, present plaintiff, for loans to the amount of $25,000. After investigation, the latter agreed to advance this amount on separate individual notes of Buzzard and Hess for $12,500 each, drawn to the order of the father of the latter, Philip W. Hess, and endorsed by him, provided he deposited certain securities as collateral. The latter was interested in the success of the construction company, and was of the belief that if the road work under contract could be completed, not only would the monies already expended be salvaged, but that a profit would result. Checks to the father's order were drawn by the discounting bank, which he endorsed, and they were deposited to the credit of the Masterson Corporation, reducing to that extent the amounts already improperly withdrawn by the makers of the notes from the trust company. Philip Hess, the father, also arranged to pay the balance of $17,000 due the latter, by assuming personal liability therefor.

The interest in the New York contract had already been assigned to the defendant in 1924, as noted. When the father undertook to make the advances necessary to complete the road, and thus prevent loss of the sum invested, and protect any possible equities, the trust company agreed to assign to him the monies thereafter coming due under the construction contract, and, on April 22d, passed a resolution providing that the sums payable should be applied, "first, to indebtedness of the Masterson Construction Corporation due to Philip W. Hess, or to be hereafter incurred, either through monies advanced on liabilities of said corporation by said Philip W. Hess for the purpose of completing the said contract, and, second, to the indebtedness of said corporation to the said Bangor Trust Company." This resolution, averred by defendant never to have been adopted in the form finally appearing,—an issue of fact not important in the view we take of the case,—was not put in writing at the time, but was later placed upon the minute book, and

certified to by the son Floyd, as having been approved at a meeting of the directors held on April 29th.

Prior to the loan of $25,000 made by plaintiff on May 7, 1925, Philip directed, after the date of the resolution, disregarding its wording, that all sums necessary to finish the road should first be paid from the monies received from the State of New York, and that only the net profit should be held for his benefit. This was found as a fact by the court, and was a necessary arrangement, for, if the additional work was not executed and the necessary bills therefor satisfied, no further sums would be receivable under the contract. It may be here noted that there was paid to the time of final settlement the total sum of $50,258.32, and this entire amount had been expended in completing the work, there being no balance remaining for any one.

Plaintiff contends that the resolution, as appearing upon the minutes, conclusively controls; that the direction to apply funds to finish the road should not be considered, and that all sums thereafter received were payable to it as assignee of Philip, and could not be used for carrying on the road construction, as was done, under his direction. He was clearly bound thereby, notwithstanding the wording of the minute. The rights of his assignee could rise no higher, unless the original obligor was notified of intervening rights of some third party prior to the acceptance of such direction: Rider v. Johnson, 20 Pa. 190; Miller v. Kreiter, 76 Pa. 78; Florence v. D., L. & W. R. R. Co., 258 Pa. 456; Gaullagher v. Caldwell, 22 Pa. 300; Hoverter v. Consedine, 82 Pa. Superior Ct. 294; Hoeveler-Stutz Co. v. Cleveland Motor Sales, 92 Pa. Superior Ct. 425.

At the time the notes were discounted by the plaintiff, the endorser called attention to his equities in the Masterson Construction Corporation contract, and verbally agreed that such should likewise be held as additional security for the monies then borrowed, thus equitably assigning to it such rights as he had. In view of the

resolution referred to, plaintiff insists the interest first acquired by Philip, by the action of the directors of the trust company, cannot be varied by his supplemental agreement that from the monies received payments should first be made to complete the road. The claim is made that plaintiff's funds were paid out on the faith of the contract appearing in the minute as certified. Though the same, on its face, showed any sums receivable were to be on account of work to be performed on an unfinished road, yet no inquiry was made as to the true situation when the notes were discounted, nor was any notice given of the transfer of Philip's interest until January of 1926, by which time it was apparent that there would be no balance above the amount of outlay necessary to complete the highway.

Appellant states fairly in its brief: "The consensus of all the opinions in this State, as elsewhere, is that the penalty which the assignee must suffer, by not giving notice to the debtor of an equitable assignment, is that if the assignor or creditor makes other assignments, or there are set-offs or subsequent dealings between the original parties, the party owing the debt assigned cannot be held liable to the assignee." ' That there may be an equitable assignment of a right of action cannot be questioned (Hurley v. Ashbridge, 55 Pa. Superior Ct. 523), but to fix the rights of one claiming thereunder it must be shown that the one to be bound has received notice thereof before other rights have accrued or intervened: Phillips's Estate (No. 3), 205 Pa. 515; Florence v. D., L. & W. R. R. Co., supra. Though the giving of the necessary information may be inferred from circumstances proven (North Penn Iron Co. v. International Lithoid Co., 217 Pa. 538; Tritt's Adm. v. Colwell's Adm., 31 Pa. 228; Columbia & Montour El. Co. v. North Branch Transit Co., 258 Pa. 447), yet the knowledge of the transfer must be brought home if the holder of the fund is to be bound. It is not contended that the plaintiff bank made any inquiry as to the scope of the assign-

ment,—though, on its face, it showed the necessity of completion of the work before any sum could become due,—or that it gave any actual notice of the verbal transfer until January, 1926. In the meantime the original assignee had agreed, subsequent to the passage of the resolution relied on, that the monies first received from New York should be devoted to carrying out the contract.

It is argued that, since the arrangements for the discount were made by Buzzard, president of the trust company, and Floyd Hess, secretary and treasurer, who displayed what purported to be a certified copy of its resolution, sufficient notice was furnished. It will be remembered that the two men named were acting, in making the loan, as individuals and officers of the Masterson Construction Corporation, and endeavoring to secure funds to replace monies improperly taken from defendant company. Though a bank may be chargeable with knowledge acquired by its offcers pertaining to the scope of its business, this rule does not apply when they are acting personally and for their own interests, for in such case it will not be presumed that they informed their principal of facts which it was harmful for them to disclose: United Security Co. v. Central Nat. Bank, 185 Pa. 586; National Union Fire Ins. Co. v. Mellon Nat. Bank, 276 Pa. 212; United States Bank v. Evans, 295 Pa. 541; Dominion Trust Co. v. Hildner, 243 Pa. 253.

The court below has found that the funds of the trust company were misused and misapplied by Buzzard and Hess. It also held that the monies, which they were endeavoring to secure, were to be used in making restitution for their wrong and constituted individual transactions. In so acting, they were not agents of the trust company. It is said, however, that the money, though paid to the construction corporation, was actually in turn appropriated by it to pay illegal overdrafts. "Acceptance of benefits of unauthorized action by an agent will not raise an estoppel, unless done with notice or

knowledge on the part of the principal. Knowledge by the president [or other officer] of a corporation, acquired in another transaction is not notice to the corporation": Bangor & Portland Ry. Co. v. American Bangor Slate Co., 203 Pa. 6; Moores v. Citizens Nat. Bank, 111 U. S. 156; 7 C. J. 534.

It does not appear that the discounts were made by the plaintiff bank for the advantage and use of the trust company with its knowledge, so that its demands against the construction company could be reduced, but that the entire transaction was on behalf of the latter through Buzzard and Hess, acting as its officers. The mere fact that the monies secured by the construction company were used in part to repay sums improperly diverted from the defendant's funds, is not enough to show that the loans were made for its benefit. Under the circumstances appearing, there is no reason for the application of the rule that, where one of two innocent persons must suffer, the one making possible the loss shall bear the burden, as in Greensburg T. & T. Co. v. Aspinwall-Delafield Co., 266 Pa. 160, cited by appellant. Here, the trust company did nothing which gave its officers the right to use the resolution, as they did, for their personal purposes, and the defendant was entirely innocent in the transaction. The negligence was on the part of the plaintiff in not making proper inquiry when Philip Hess assigned his supposed right to it, for such would have disclosed beyond question the true situation as to the road contract, and the necessary application of the funds to be received in payment.

Admittedly, there may be an equitable assignment of a right, which becomes binding after notice, and appellant insists that the information secured by the president, secretary and treasurer, is sufficient to establish this latter fact. Assuming knowledge so conveyed to be sufficient, we would still be met with a prior equitable assignment or reassignment by Philip Hess of all his rights under the resolution of April, 1925, by which he

stipulated that the trust company should first deduct the sums necessary to complete the road, which agreement was known not only to the same officers named, but also to the entire board of directors, and could not be varied without the consent of the latter. The attempted transfer to the plaintiff was subsequent to this reassignment and subject to it, even though it were held the former was otherwise legally adequate. Under the circumstances, plaintiff's rights could in no event be greater than those possessed by its assignor, and the latter had directed how the fund should be disposed of, before any payment should be made to him, or one claiming through his assignment.

Examination of the record convinces us that a proper conclusion was reached, and no error has been pointed out which would justify a reversal. Without referring to them specifically, all of the assignments of error are overruled.

The decree is affirmed at the cost of appellant.