# Kentner, Township Treasurer, Assignee, v. Society Maid Hosiery Mills, Inc.

*High, Dettra & Swartz,* for plaintiff.

*Maxwell Strawbridge* and *Hirschwald, Goff & Rubin,* for defendant.

KNIGHT, J., October 28, 1932.—The facts, as we gather them from the affidavit of defense and the admitted averments of the sci. fa., are these:

On March 23, 1931, the defendant executed and delivered to the Willow Grove Trust Company its bond and mortgage to secure the payment of $20,000 in twenty monthly instalments of $1000 each. As one of the conditions of obtaining the above loan, the defendant company orally agreed to maintain a balance on deposit with the trust company of from $8000 to $10,000 during the time it held the mortgage. The defendant company complied with the terms of the mortgage and the oral contemporaneous agreement, and on October 5, 1931, had paid to the trust company six of the monthly instalments of $1000 each, and had on deposit with the banking institution the sum of $8817.99.

On October 5, 1931, the Willow Grove Trust Company, being then insolvent, closed its doors, and its assets were taken over by the Department of Banking of the Commonwealth of Pennsylvania for the purpose of liquidation. On August 17, 1931, the Willow Grove Trust Company assigned the above-mentioned mortgage to the plaintiff, together with other collateral as security for deposits of public money made by the plaintiff. This assignment was not recorded until October 26, 1931, and the defendant had no notice or knowledge of it until November 1st following. The defendant paid two instalments of principal—on September 1st and October 1st—to the trust company, which money was accepted by the company and retained for its own use.

When the defendant was notified of the assignment, it immediately offered to pay Kentner the difference between the balance due on the mortgage and its deposit in the closed bank, and also to assign that deposit to the plaintiff. The offer was refused, this suit followed, and the sufficiency of the affidavit of defense setting forth the above facts is challenged in the motion now before us.

Has a depositor in an insolvent bank a right to set off his deposit against a mortgage debt due by him to the bank? This question is hardly open for discussion, for the principle that a depositor can set off the amount of his deposit against an obligation due his bank on its becoming insolvent is well established in Pennsylvania under the Defalcation Act of January 12, 1705, 1 Sm. Laws 49; Jordan et al., Assignees, v. Sharlock, 84 Pa. 366; Skiles v. Houston, 110 Pa. 254; Jack v. Klepser, 196 Pa. 187; Fisher, Commissioner of Banking, v. Davis, 278 Pa. 129. The fact that the obligation of the depositor is a mortgage makes no difference. "Mortgages are not excepted out of the general defalcation act, and they may be reduced by way of set-off just as other evidences of indebtedness:" Somerset Colliery Co. v. John, 219 Pa. 380, 383.

Did the assignment of the mortgage, without notice to the defendant until after the bank closed, deprive the defendant of its right to set off its deposit against the mortgage debt?

A mortgage is a specialty, and the assignee of a specialty takes it subject to the equities existing between the original parties: Myerstown Bank v. Roessler, Exec'r, 186 Pa. 431; Wilson et al. v. Ott et al., 173 Pa. 253; Ritter v. Thomasky, 70 Pa. Superior Ct. 615. This principle applies as well in the case of set-off as payment: Rider v. Johnson, 20 Pa. 190.

The contractual relations between an assignee of a mortgage and a mortgagor become fixed when the latter receives actual notice of the assignment, and until that time, the mortgagor can do whatever he could legally have done if no assignment had been made. Gaullagher v. Caldwell, 22 Pa. 300, cited and quoted with approval in Walker v. Emerich, 300 Pa. 9.

Before applying these well-established rules of law to the case before us, let us see what were the equities existing between the trust company and the defendant at the time the assignment was made and at the time the bank closed.

At the time the assignment was made the defendant had on deposit with the bank between $8000 and $10,000, which it was required to keep there under its agreement. When the mortgage was assigned, this agreement was at an end, and the defendant, if it had notice, could have adjusted itself to the new relationship and could have withdrawn the deposit or applied it to the mortgage debt. It was the duty of the plaintiff to notify the defendant of the assignment, and if he chose to keep the defendant ignorant, it should not be prejudiced or made to suffer because of an assignment of which it knew nothing: Walker v. Emerich, supra.

Not only did the plaintiff fail to give notice of the assignment, but with the mortgage presumably in his possession, he permitted the defendant to make two payments of principal to the trust company. True, he gives the defendant credit for these payments, but that does not undo the harm done the defendant in depriving it of the opportunity of regulating its conduct in the light of the changed relationship.

When the bank closed its doors on October 5, 1931, the legal status of the original parties to the mortgage, so far as the defendant was concerned, became fixed by virtue of the Defalcation Act. The defendant, so far as it knew, owed the bank a balance of $14,000 on its mortgage, and the bank owed the defendant the amount of its deposit. If the effective date of the assignment was the day that notice was given the mortgagor and not the date of its execution, it follows that the assignee could hold no better position on October 5th than the bank held, and that any set-off available by the defendant against the bank at that time was available against the assignee. That the effective date of the assignment was the time when notice was given and not

the time of the assignment is well settled: Rider *v.* Johnson, 20 Pa. 190; Foster *v.* Carson et ux., 159 Pa. 477.

We are, therefore, of the opinion that the plaintiff took the mortgage subject to all the equities that existed between the defendant and the trust company when the latter closed its doors on October 5, 1931.

The affidavit of defense further avers that the plaintiff was not a good faith holder for value of the mortgage, because he merely took it as a pledge for the security of his deposit of public moneys. In view of our disposition of the case as above set forth, we deem it unnecessary to discuss this phase of the problem, except to say that we deem the plaintiff a holder for value—at least to the extent necessary to satisfy the debt of the bank to the plaintiff.

Counsel for the plaintiff has filed no written brief, but we gather from his oral argument, and the reasons assigned in support of his motion, that he contends the Defalcation Act does not apply, because there was no mutuality of obligation between the plaintiff and defendant; that is, the plaintiff owed nothing to the defendant.

If this contention were to prevail, the Defalcation Act—a time - honored statute, founded on justice and equity—could be easily evaded by secret assignments and a broad avenue opened up for those who seek to succeed by trickery and fraud.

And now, October 28, 1932, the rule for judgment for want of a sufficient affidavit of defense as to the sum of $5182.01, with interest from October 1, 1931, is made absolute; as to all other amounts, including counsel fees, the motion is overruled, and the reasons therefor dismissed.

From Aaron S. Swartz, Jr., Norristown, Pa.