## Sergeant *versus* Ingersoll.

1. In a case brought up on error to the Nisi Prius, this court will not examine the merits of the case as it stood before that court on a motion for a new trial. The decision on this point, in Klein *v.* The Franklin Insurance Co., in 1 *Harris* 247, affirmed.

2. A purchaser of the *legal* title having notice that the estate is affected by other interests than those of the vendor of that title, (as of the existence of a secret trust,) is bound to inquire into the extent and terms of those interests. The decision in Sergeant *v.* Ingersoll, reported in 7 *Barr* 340, affirmed.

3. Where a question existed as to whether a broker who sold a ground-rent, acted in the matter as the agent of the purchaser as well as of the owner of the legal title, direct evidence as to the fact not existing on account of the remoteness of the transaction, the matter resting to a considerable extent on probabilities, entries in the day-book of the broker, showing a memorandum as to a receipt for drawing a deed for the ground-rent in question, and entries of a like character showing that he acted, about the same time, in another real-estate transaction, as the agent of the purchaser, may be submitted to the jury, to show for whom he acted in the transaction in question.

4. Where a ground-rent has been conveyed to one in trust for another, the written declaration or acknowledgment of the real owner of the rent, made at the time of the conveyance of the ground-rent, at his instance, to a purchaser of it, in relation to the character of the trust, being a link in the chain of events, may be given in evidence as part of the *res gestæ;* and being made in *prejudice of his interest,* is admissible, after his death, in a contest between the said purchaser of the ground-rent and a former purchaser of the lot from the said *cestui que* trust, claiming to hold the same discharged of the rent.

ERROR to the Nisi Prius, *Philadelphia.*

This was an action of covenant, by Elizabeth Sergeant's executor against Charles J. Ingersoll, for arrears of ground-rent. The declaration contained two counts; the first upon a deed reserving a rent of $351, which had been granted to ·the plaintiff, issuing out of land which had been conveyed to the defendant; the second upon a like deed, reciting, however, apportionment of the rent resulting from a release of part of the premises by an intermediate grantee, and claiming the apportioned arrears.

The defendant pleaded covenants performed, with leave, &c., and gave notice of special matter, in which he alleged, *inter alia,* that Joseph Reed, his grantor, had conveyed to him the premises, from which the rent had issued, free and discharged of the same, and with a covenant to extinguish it; that John Sergeant, the plaintiff's grantor, subsequently bought the rent as trustee for Mr. Reed, and at his request extended the time for redemption, released part of the land, and sold the rent again; that the plaintiff had notice of

these facts when she purchased, and therefore, under a former decision in this case, could not recover.

Joseph Reed had conveyed to Charles J. Ingersoll the premises from which the rent issued, free and discharged of the same, and with a covenant to extinguish it.    John Sergeant, the defendant's grantor, subsequently bought the rent *as trustee for Reed,* and at his request, extended the time for its redemption, released part of the land and sold the rent again : and it was alleged on the part of the plaintiff, that Mrs. Sergeant had notice of these facts when she purchased the yearly rent-charge of $351, and received the conveyance of the same from John Sergeant, on the 3d May, 1819.

The ground-rent arose under a conveyance of 30th September, 1811, by O'Connor and wife to McIlwham, of a lot of ground on the west side of Fifth street near to Walnut street, Philadelphia, subject to a yearly ground-rent of $351.    In Sept. 1814, McCauley and C. McIlwham conveyed the lot to Joseph Reed in fee, subject to the said ground-rent, payable to O'Connor and wife.    By deed dated 9th Oct. 1818, Joseph Reed and wife conveyed the lot to Charles J. Ingersoll, in consideration of $11,250; *free and discharged from the aforesaid rent-charge,* liens and encumbrances whatsoever, and covenanted to extinguish the rent-charge of $351, within the time limited for extinguishing it, or within the time to which it might be extended; and, in the mean time, to keep him indemnified.

By deed, dated the 31st October, 1818, Ann O'Connor and others conveyed *the ground-rent* to John Sergeant, Esq., in fee. On 6th February, 1819, John Sergeant, by endorsement on the deed of September 30, 1811, agreed to extend the time for redemption of the rent-charge for ten years.    On 30th April, 1819, Ingersoll conveyed part of the ground to Smith, and John Sergeant, on 1st May, 1819, released that part from the rent.    Mr. Sergeant was acting in the matter *as the trustee of Reed.*    The *ground-rent* had been purchased by Reed.    John Sergeant, by deed, dated 3d May, 1819, in consideration of $5265, at the instance of Reed, *conveyed the rent* to Mrs. Sergeant, the testatrix of the defendant in this suit. .

See the facts more fully stated in the reports of the same controversy, in 1 *Wharton* 337, and 7 *Barr* 340.

This case was tried at Nisi Prius before BELL, J.    On the trial, the deposition of John Sergeant, Esq., was read.    In it he said—My belief is that I never heard of the sale (meaning of the ground-rent, to Mrs. Sergeant) until Mr. Joseph Reed brought the deeds to my office, with Alderman Pettit, to be signed.    The transaction was Mr. Reed's ; I had no interest in it ; never received a dollar from it ; and I had no concern with Mr. Reed that I know of.    My position was that of a friendly trustee, without any interest—not even that of a trustee—merely to execute papers.

[Sergeant *v.* Ingersoll.]

The following paper was offered on part of *defendant* :—

" Deed, 31st October, 1818, Ann O'Connor and others, to John Sergeant, for an annual ground-rent of 351 dollars, issuing from a lot of ground on the west side of Fifth between Walnut and Spruce streets. Consideration, $5850.

" The above conveyance was made to Mrs. Sergeant at my request and for my use. I paid the consideration to Mr. Sergeant, who afterwards paid the same to the grantors.

" At my request, a portion of the lot has been released from the rent, being that part which has been conveyed by Charles J. Ingersoll, Esq., to Jonathan Smith, Esq. ; deed 30th April last. This day, May 3d, 1819, the rent-charge which was held by Mr. Sergeant in trust for me has been conveyed to Mrs. Elizabeth Sergeant, and the consideration paid to me.

" Mr. Sergeant has no interest whatever in this transaction ; his agency was altogether to oblige me. Although he has signed the receipt for the consideration money, the same was paid to me. It is proper I should make this declaration, to serve hereafter if need be, assuming all responsibility and engaging to indemnify Mr. Sergeant from all loss and damage which he may sustain.

" May 3, 1819. (Signed) Jos. REED."

To which plaintiff objected, but the court admitted it " to show that Mr. Sergeant was a mere trustee." Exception on part of plaintiff.

The bank-book of Mr. Sergeant was given in evidence, on the part of defendant, to show that no money was received by him from Mrs. Sergeant, at or about the time of the execution of the deed to her. It also appeared that John Bonsall, Esq., a real-estate broker and conveyancer, had the ground-rent in question for sale, for Mr. Reed, in 1818 or 1819. He was examined, and produced his day-book, as conveyancer and real-estate broker, in which was the following entry, dated November 20, 1819 : " Received of Joseph Reed, Esq., commissions on sale of a ground-rent to Elizabeth Sergeant and drawing two deeds poll, $56.65." He stated that he did not always receive the money on the same day the deed was dated; that he received it afterwards generally. Also, an entry under date of November 14, 1848 : " Received of Joseph Reed, for drawing a deed from Ann O'Conner and others to John Sergeant, Esq., $7.75." Also, another entry, viz : " Received of Elizabeth Sergeant, for drawing two deeds to her, one from Thomas Leiper and wife, and the other from John Sergeant and wife, $12."

It appeared that there was a charge by Mr. Bonsall for cash paid for certificates (meaning as to liens) against Thomas Leiper, but that there was none as against John Sergeant; and Mr. Bonsall testified that if any searches had been made as against John Ser-

geant, the entry would appear on his book.   He said that he had forgotten the transactions, and testified from his *book alone.*

A notice had been given to the counsel of Mrs. Sergeant to produce any searches made for her for judgments, mortgages, or prior encumbrances with a view to her purchase of the ground-rent in controversy, in May 1819.

On the trial, the counsel *for plaintiff* submitted a number of points, the 12th, 13th, and 14th of which were—

12. That the jury are to apportion the rent with reference to the respective values, at the time when said release bears date, of the said entire lot and the portion thereof conveyed to Mr. Smith, without reference to the right of way granted by Mr. Ingersoll to Mr. Smith.

13. That the defendant cannot abate the amount of rent so apportioned which may have become due since the        day of 1828, by deducting, defalking, or asking credit for any part of the moneys paid by Joseph Reed on account of said rent or the arrears of the same.

14. That interest upon the arrears of rent up to the present time is properly recoverable in this action.

His Honor, BELL, J., charged the jury at length, and recapitulated as follows :—

1. There is nothing in the deeds to convey constructive notice to Mrs. Sergeant.

2. *If she directly negotiated with, and purchased from Reed, as one having an interest and power of disposition, she is affected with notice of all the facts, and cannot recover.*

3. *If she had actual knowledge of Reed's latent equity or interest, from whatever source, before her purchase, she cannot recover.*

4. If she did not know Reed in the transaction, but negotiated with Bonsall, as the general agent, as representing the rent, and who did not communicate to her the fact of Reed's title, she is not estopped to deny it, and may recover.

5. *If Bonsall sold as the agent of Reed, with a full knowledge of all the facts, but did not communicate them to her, she is not bound by them, and may recover, unless,*

6. *She constituted Bonsall her general agent in the same transaction, and was thus affected by his knowledge.*

7. Such general agency would not result from paying for the deed from John Sergeant to her, or indeed actually employing Bonsall to prepare it.

8. But if, in the course of the transaction, she relied on Mr. Reed, and chose to abide by his representations without seeking other information, he may be regarded as her agent, and she will, in the absence of fraud, be bound by his knowledge.

To these propositions may be added, with propriety, my answer to the plaintiff's sixth point.   It is, that the offer to sell, and the

[Sergeant *v.* Ingersoll.]

subsequent sale by one having possession of the title deeds of an estate, and the procurement by him of the conveyance of the legal estate to the vendee by the holder of the legal title, will not affect the vendee with notice of a latent equitable title in the party actively procuring the sale and conveyance. If, therefore, the jury believe as is stated in the conclusion of the point, there is nothing in these facts alone to fix a notice upon Mrs. Sergeant of Reed's interest in the ground-rent.

*Whether the defendant, (upon whom undoubtedly the onus of proof lies) has succeeded in proving notice, is for the jury, under the instructions already given.*

In addition to those already noticed, both parties have submitted a variety of other points.

Of those propounded by the plaintiff, the first seven are already sufficiently answered. *The eighth and ninth are based upon a long recital of facts partly shown and partly conjectured or argumentatively stated. I might perhaps decline to give it an answer. The gist of it seems to be that Ingersoll had notice of the transfer to Sergeant and the object of it, and consented to it. That he was therefore bound to give notice. The release to Smith and conveyance to Mrs. Sergeant were made the same day. Ingersoll could scarcely have had notice of these several matters. There is no evidence that he knew of, and consented to the transfer to Mr. Sergeant, as the act of Reed, simply to keep the rent alive, nor that he was actually aware of the extension. If Mrs. Sergeant had notice, Mr. Ingersoll was not bound to give it. I see nothing in this point to destroy the defence.* The tenth is already sufficiently answered affirmatively. *The eleventh is negatived.*

Of the points submitted by the defendant, the first twelve have already been answered. The 13th, 14th, and 15th embrace the whole case, and have been before considered. *Whether, in respect of each other, the parties are to be considered as bona fide purchasers for value, depends on the principles already explained as applied to the facts to be ascertained by the jury.*

If, under the instructions given, the jury shall be of opinion the plaintiff is entitled to recover any thing, the amount she may be entitled to is to be ascertained according to the principles stated in the plaintiff's 12th, 13th, and 16th points.

It follows, the defendant's 16th point is negatived.

Reasons were assigned on the part of plaintiff in the action, for a new trial, and the same were assigned as error, with the addition of three others, viz. the 29th, 30th, and 31st, to the effect that the verdict was against the weight of the evidence, the charge of the court, and against the law upon the evidence. See the opinion of the chief justice, as to the errors which were considered proper to be noticed in this court in the decision of the case.

[Sergeant *v.* Ingersoll.]

The case was argued by *E. S. Miller*, for plaintiff in error.
*C. Ingersoll* and *J. R. Ingersoll*, for defendant.
*J. M. Scott*, in reply.

The opinion of the court was delivered April 31, 1851, by

GIBSON, C. J.—Notwithstanding the decision in Klein *v.* The
Franklin Insurance Co., 1 *Harris* 249, the plaintiff's counsel have
attempted to open the merits of the case, as if it stood on a motion
for a new trial; but with what expectation of advantage, I know
not.   Unless it were possible to override the decision when the
cause was last before us, there would be a barren field for argu-
ment on the specific exceptions; and the principal effort has ac-
cordingly been to drive us from our position.   The principles of
that decision, after careful consideration, had the assent of all the
judges who sat at the argument; and I must be permitted to say,
I never delivered an opinion of whose soundness I am more confi-
dent.   The objection pressed upon us is, that the plaintiff was
treated as a purchaser merely of Mr. Reed's resulting trust, and
not of the legal title which she received from Mr. Sergeant along
with it.   Had she not received that title, it is not pretended that
she would have stood in any other equity than that of Mr. Reed
himself.   But how can the legal title help the purchaser of an
equity, if it were not acquired in good faith ?   To Hiren *v.* Mill,
13 *Vesey* 114, and the anonymous case in 2 *Freem.* 137, pl. 151, cited
on the former occasion, it is proper to add Smith *v.* Law, 1 *Atk.*
490, and Taylor *v.* Stibbert, 2 *Vesey Jr.* 440, to show that whenever
a purchaser has notice that the estate is affected by other interests
than those of the vendor of the legal title, he is bound to inquire
into the extent and terms of those interests.   If Mrs. Sergeant dealt
with Mr. Reed for a title that was not in him, could she fail to per-
ceive that it was affected by some particular interest of his own ?
In the last of the preceding cases, Lord LOUGHBOROUGH said, it is
sufficient to put a purchaser on inquiry, that he was informed the
estate was not in the actual possession of the person with whom he
contracted; that he could not transfer the ownership and the pos-
session together; and that there were interests into the extent
and terms of which it was proper to inquire.   Whatever may be
said by the text-writers, it is sufficient that there is no decided case
which impinges on that principle.   Popham *v.* Baldwin, 2 *Jones's
Exch.* 320, was decided on the registry act; and the master of the
rolls in Hanbury *v.* Litchfield, 2 *Mylne & K.* 629, attempted no
more than to set what he thought to be reasonable bounds to the
principle.   He said, for no reason which I can appreciate, that if
the tenant in possession holds under a derivative lease, and without
knowledge of the covenant in the original lease, it has never been
held want of due diligence if the purchaser do not pursue his in-
quiries through every derivative lessee till he arrive at the primi-

tive one. It would cost him very little trouble, and I think it would not be too much to require him to do so. I see no reason why a purchaser put on a trail should not be bound to follow it out. The preceding authorities show that a purchaser who shuts his eyes to the things that lie in his path, proceeds at his peril. But authority for a principle so plain seems to be unnecessary. With what unction could the purchaser of a hidden equity say to his conscience, the title has been vested in a trustee, doubtless, to conceal the property from creditors, or for some other purpose as unfair; but that touches not me. I shall probably lend myself to the accomplishment of a fraud, but I shall be safe under the panoply of the legal title, which, like charity, often covers a multitude of sins. Instead of respecting such mental suggestions, equity compels men to look beyond their exclusive interests, by restraining them from unnecessarily doing any thing to the injury of third persons. The principle which requires the purchaser of a legal title to get to the bottom of a mystery connected with it, is the same which requires a creditor to respect, so far as he may, the interests of a surety for the debt. It is a principle of common honesty that no man, apprized of the existence of a secret trust, can purchase the legal title without being affected by every circumstance beneath the surface of it. Had Mrs. Sergeant proposed to deal for the property with Mr. Sergeant, she would have been told that he had nothing to do with it but to sign papers under the direction of Mr. Reed. Had she demanded of Mr. Reed why he had purchased it in the name of Mr. Sergeant, she would have been told that he was bound by a covenant with Mr. Ingersoll to extinguish the ground-rent at a time to come, and that his object was to keep it afoot in the mean time. That would have led to a call for the covenant, by which the whole story would have been told.

At the last trial, a new element was brought into the cause by the testimony of Mr. Bonsall, which raised a question of fact, whether Mrs. Sergeant had not purchased from him without notice of Mr. Reed's title; and as the proper direction in regard to every thing else has been settled, our business, so far as concerns the charge, is with that alone. The books of the witness showed that he had received a broker's commission on the sale, and *prima facie* that he was the seller. To rebut the presumption from it, there was evidence that she had paid the purchase-money to Mr. Reed, which was left to the jury.

The only thing about which the mind halts, is the alleged agency of Mr. Bonsall for Mrs. Sergeant, which is alleged to have been left to the jury without evidence. "If," said the judge, "Bonsall sold, as the agent of Reed, with full knowledge of the facts, but did not communicate them to her, she is not bound by them, and may recover, unless she constituted Bonsall her general agent in the same transaction, and was thus affected by his knowledge.

2 E

[Sergeant *v.* Ingersoll.]

Such general agency would not result from paying for the deed from John Sergeant to her, or, indeed, actually employing Bonsall to prepare it." The defendant had contended that proof of payment for the deed was sufficient; and the evident meaning of the judge was, that his principle was right, but that the evidence did not bring the case within it. But there certainly was evidence of agency—faint undoubtedly, but still evidence—in the book of Mr. Bonsall itself. A broker is employed to negotiate contracts, but, as he has no property in the article or thing, not to sell in his own name; and his principal is entitled to rely on his forbearance to do so: 1 *Bell's Com. Jur.* 477. The presumption therefore is, that Mr. Bonsall sold in the name of Mr. Reed. But sometimes a broker acts as a factor for both buyer and seller: *id.* 478; and, when that is the case, the buyer is necessarily affected by his factor's knowledge. No person appears to have acted for Mrs. Sergeant, if Mr. Bonsall did not. Mr. Sergeant certainly did not; and if Mr. Reed did, she would be affected by his knowledge. She may have dealt with Mr. Bonsall as a stranger; but it is improbable that a lady would manage such a transaction herself. From an entry in his books, he would seem to have been her man of business in a similar transaction at the same time. The evidence, resting as it does in probabilities, is certainly slight; but in a transaction so remote that the surviving witnesses are unable to recollect the circumstances, even probabilities may be weighed.

Mr. Reed's exposition of Mr. Sergeant's trust, at the execution of the conveyance, was one of a combination of circumstances in the transaction; and the value of such evidence, it is said in Professor *Greenleaf's* treatise, sec. 120, " lies in this, that it was contemporaneous with the principal fact done, forming a link in the chain of events, and being part of the *res gestæ*. It is not merely the declaration of the party, but it is a verbal contemporaneous act, belonging, not necessarily indeed, but ordinarily and naturally, to the principal thing." Can it be doubted that this paper was such? On another principle it was equally competent. It was a written acknowledgment in prejudice of Mr. Reed's interest, which became the best evidence of which the fact was susceptible at his death. It was a relinquishment of claim for the purchase-money, and it was an admission that he was responsible for the consequences of the transaction. The rule is clear, that a sacrifice of interest is an equivalent for the judicial oath when the latter cannot be had; and there is no reason to restrain it to book-entries. When it is put in writing, to serve as evidence against the party who made it, what matters it whether it is recorded on a separate sheet of paper or in a book? On the points open to argument, therefore, the plaintiff has failed.

Judgment affirmed.

COULTER, J., dissented.