Bangor and Portland Railway Company, Appellant, *v.* American Bangor Slate Company of Pennsylvania.

*Corporations—Contract—President—Directors—Agent—Estoppel.*

The president of a slate company has no inherent authority to bind the company by a contract to ship all its productions in a certain way or by a certain line.

Nor does authority to raise money for the company upon mortgage imply authority to make such a contract as an incident of the loan.

Acceptance of benefits of unauthorized action by an agent will not raise an estoppel, unless done with notice or knowledge on the part of the principal. Knowledge by the president of a corporation, acquired in another transaction is not notice to the corporation.

Where the president of a railroad company, who was practically the owner of all its shares, procures the president of a slate company to execute a written agreement to ship all of the latter's products over the railroad, and it appears that such agreement was not authorized by the directors or known to any of them, except the president of the railroad company who was also a director of the slate company, and it also appears that under the by-laws the president had no authority to make such a contract, and there is nothing to show that the slate company ever ratified the contract, such contract is void, and cannot be specifically enforced.

Argued March 19, 1902.    Appeal, No. 53, Jan. T., 1902, by plaintiff, from decree of C. P. Northampton Co., Sept. T., 1901, No. 1, dismissing bill in equity in case of Bangor & Portland Railway Company v. American Bangor Slate Company of Penn-

sylvania, American Bangor Slate Company of New Jersey, Lehigh & New England Railroad Company and The Genuine Bangor Slate Company.   Before MITCHELL, DEAN, BROWN, MESTREZAT and POTTER, JJ.   Affirmed.

Bill in equity by the Bangor & Portland Railway Company for injunction against diverting the transportation of slate products and freight produced upon certain premises, contrary to an alleged agreement between the railway company and the American Bangor Slate Company of Pennsylvania for specific performance of the alleged agreement and for assessment of damages for breach thereof.

SCOTT, J., filed an opinion, in part as follows :

This transcript is so voluminous, and the requests which have been answered so extended, that some brief statement of the essential and disputed questions involved in this controversy is desirable.

On September 16, 1884, the written paper printed as Exhibit A in plaintiff's bill of complaint, was executed by General Frank Reeder, president of the American Bangor Slate Company, the seal affixed and delivered to Conrad Miller, president of the plaintiff corporation.   It was acknowledged and on November 12, 1885, recorded.   The freight of the slate company was transported over the Bangor and Portland railroad until January 1, 1900, when the quarry, its fixtures and premises of this first named defendant were leased for the term of twenty years to the American Bangor Slate Company of New Jersey, a corporation of that state.   After January 2, 1901, its manufactured products were delivered to the Genuine Bangor Slate Company, another defendant, pursuant to the latter's written engagement with the American Slate Company (not one of these defendants) which then by contract with various companies, including this one, controlled their output. The Lehigh and New England Railroad Company in the early part of 1901, had constructed its road into this territory and thereafter the slate manufactured by the American Bangor Slate Company of New Jersey, through the agencies named, was shipped over its lines.   On August 1, 1900, the Delaware, Lackawanna and Western Railroad Company acquired control

of the plaintiff corporation by the purchase of a majority of its capital stock.

This bill was filed September 4, 1901, to enforce specifically the written agreement of September 16, 1884.

The defendants separately and collectively resist a decree against them, for the following reasons, inter alia:

1. That the contract was not authorized by the board of directors of the American Bangor Slate Company; was not legally executed by the president; that its existence was not known to the individual members thereof, and was not affirmed or ratified.

&ast;      &ast;      &ast;      &ast;      &ast;      &ast;      &ast;      &ast;

Other propositions have been suggested by argument, and some of them will invite discussion, but they are incidental only and bear close relation to these principal points of contention.

No corporate action was ever taken, authorizing the agreement signed by the president of the American Bangor Slate Company, and there is no evidence submitted that it was formally approved or ratified by the company. The circumstances under which it was executed and the apparent consideration which by recital therein supports it, will be subsequently considered. The seal was not affixed by the secretary, its legal custodian, nor in his presence.

&ast;      &ast;      &ast;      &ast;      &ast;      &ast;      &ast;      &ast;

Conrad Miller, to whom the executed contract was delivered, was the president of the plaintiff corporation, and held all the stock therein except a few shares, necessary to qualify for other membership in its board of managers. He was also one of the directors in the American Bangor Slate Company.

The president of the last named corporation had no incidental or inherent authority to make the contract embodied in this agreement: Cook on Corporations, sec. 716, and cases cited. If it be a covenant which runs with the land (Bald Eagle Valley R. R. Co. et al. v. Nittany Valley R. R. Co., 171 Pa. 284), it is without limit in duration and imposes a charge upon the title which follows a purchaser after notice in equity, or by operation of the recording acts. Such contracts are not within the usual functions of an individual officer, nor limited to the usual business routine: First Nat. Bank of Allentown v. Hoch, 89 Pa.

324; Twelfth St. Market Co. v. Jackson, 102 Pa. 269; Allegheny County Workhouse v. Moore, 95 Pa. 408; Taylor on Priv. Corp. sec. 236.

The plaintiff maintains that corporate authority for the agreement is implied and found in the minute of September 12, 1884, viz: " Present: Smith, Colbert, Amy, Miller, Mitchell and President Reeder in the chair.  Committee on loan reported having negotiated a loan of fifteen thousand dollars on first mortgage for five years, and money would be forthcoming next week or as soon as the necessary papers were ready.   On motion of Colbert and Smith, the report of the committee on loan was received, accepted, and the president authorized to execute the mortgage."  This loan had been negotiated through John I. Blair from A. H. Scribner in New York city.   On the previous 8th day of August, a committee consisting of Conrad Miller, C. Amy, and the secretary had been appointed to borrow $20,000. The agreement now in dispute was signed at the time the money was paid over to the president of the slate company.   It was given to Mr. Miller, one of that committee, by Mr. Blair after five per cent commissions had then been deducted.   The mortgage to Mr. Scribner was dated two days later.   As the resolution above cited imposes no restriction or limitation upon the power of the president, it is insisted that he was invested with full discretion to determine the condition upon which the transaction should be finally closed, and that one of them was the execution of this agreement with the Bangor & Portland Railway Company.   This is not tenable.   The contract respecting the loan from Mr. Scribner, for which security was then to be given, was quite independent of the engagement to the railroad company of which Mr. Miller was president.

The consideration, if it existed as recited in the obligation, was separate.   It bore no closer legal relation to the business expressly committed than if it had been an additional mortgage. The corporate authority to create and execute a mortgage to one person, if it includes discretion respecting its character and terms of payment, cannot by implication be extended to embrace a collateral undertaking with a second lien to a stranger.

Contracts made by corporate officers, without authority which have not been formally confirmed and ratified, may, however, be effectual in equity and have controlling force, if with full

knowledge of all material circumstances (Zoebisch v. Rauch, 133 Pa. 532), the benefits are accepted and retained: Oil Creek etc., R. R. Co. v. Penna. Transportation Co., 83 Pa. 160; Wright v. Antwerp Pipe Line Co., 101 Pa. 204; Goldbeck v. Kensington Nat. Bank, 147 Pa. 267; Boyd v. Am. Carbon Black Co., 182 Pa. 206. The rule is applied in the same way as if ultra vires acts of the corporation itself were under consideration. It is founded upon the doctrine of estoppel, rather than technical ratification in cases where otherwise corporate action might be required, and relates as well to contracts executed under fraudulent representations without any new consideration, if not absolutely void on the ground of public policy: Pearsoll v. Chapin, 44 Pa. 9; Negley v. Lindsay, 67 Pa. 217.

General Reeder personally had notice of the agreement in controversy which he signed. He was president of the American Bangor Slate Company and acquired this knowledge while engaged in the business of his corporation for which he had been specifically empowered. Knowledge of a fact thus obtained when affecting the matter then being negotiated, is notice to the principal: Houseman v. Girard Mutual B. & L. Assn., 81 Pa. 262. The only exception now recognized is where the agent is acting for his own personal interests adversely to the principal in the transaction: Gunster v. Illuminating Scranton Heat and Power Co., 181 Pa. 327.

Notice to the president of a corporation when acting within his general or special authority, will affect the company itself with the consequences of knowledge within the limitations above expressed: 4 Thompson on Corporations, secs. 4657, 5228; Cook on Corporations, sec. 727; Millward-Cliff Cracker Co.'s Est. 161, Pa. 167, 168; First Nat. Bank v. Peisert, 2 Penny. 277.

It is important, however, to determine how far the rules above stated are applicable to the present contention. In point of fact there is not here, as was said by the court of record in Twelfth Street Market Co. v. Jackson, 102 Pa. 269, "A particle of evidence that any officer or committee of the company other than (the president) had knowledge of this agreement" for a period of sixteen years, except Mr. Miller, a director, who was also the chief of the plaintiff corporation in whose interest the contract was made. On the contrary it affirmatively appears that two of them at least had no such information; and the

character of the consideration recited in the paper would not make it evident to the individual members of the board of managers that any benefit under it was actually being received. Switches had been built by the plaintiff corporation and the manufactured slate product from the defendant quarry during this period was transported over the plaintiff's railroad, but in no different manner than before the agreement for exclusive shipment was made, until 1898, when a branch was extended and a separate consideration given. It was a common carrier; transportation as a public duty was imperative, and there was then no other accessible line of railway. It was not apparent that the plaintiff had been instrumental in procuring the loan, for which the mortgage was given to A. H. Scribner. The slate company knew only that it received the money and secured repayment thereof to the lender. In addition to this it knew that Mr. Miller, who carried the check, was a member of the committee designated in the resolution by the defendant's board of directors to negotiate the loan, and that he was afterwards voted and received " twenty shares of the capital stock of the company for services rendered in securing $15,000 as per agreement."

To all outward and visible manifestations in this natural and continued business arrangement, there was nothing to imply, in the absence of information, that the American Bangor Slate Company was accepting and enjoying advantages under an independent contract.

The essential question then is, was the knowledge of this agreement imputable to the company, which the president thereof derived solely from his own unlawful execution of it, while engaged in a different transaction for which he had authority, but to which the other one did not legally relate?

The doctrine that the principal is affected with knowledge of his agent is limited in Pennsylvania to the condition that it be acquired by the latter in the particular matter for which he was employed. The reason for it is " the technical one that it is only during the agency that the agent represents and stands in the shoes of his principal :" Houseman v. Girard Mutual B. L. Assn., 81 Pa. 262. This strict rule does not now prevail in England (Dresser v. Norwood, 17 C. B. N. S. 466), but is so modified that when one transaction is closely followed

and connected with another, or when it is clear that a previous transaction is present to the mind of the agent, notice to him is sufficient.    Nor has it been approved by the Supreme Court of the United States (Distilled Spirits, 78 U. S. 366, 367 ; Hoover v. Wise et al., 91 U. S. 310 ; McIntire v. Pryor, 173 U. S. 52), where this modification is accepted, with the still further qualification that the information of the agent is not received by him in a confidential relation, or as professional adviser to another, under circumstances which would forbid communication to his last principal.    The English rule is followed also in some other jurisdictions, where it is declared that the principal is bound by his agent's knowledge, however acquired, of any matter which affects the transaction for which he is specially employed.

But the distinction above stated as first announced and long followed in England is supported by the general tendency of authority elsewhere, and has often been reasserted in this state up to the latest consideration of it in the appellate courts : Wetzel v. Linnard, 15 Pa. Superior Ct. 503.

When it is said that the "knowledge of the agent must be gained in the same transaction" (Bracken v. Miller, 4 W. & S. 111), this necessarily implies that such knowledge, to charge the principal, shall affect the matter which he then has in hand and is authorized to conduct, otherwise the distinction loses significance, and the limitation expressed is an unmeaning phrase.

If the inquiry arises whether the benefits of an ultra vires corporate act have been received, the matter of knowledge is not disputable.    The present situation is different, as it involves the ratification by estoppel of individual action, which can only result from acceptance following notice of its existence.

The corporation, by its directors, as has been shown, knew nothing either of the unauthorized contract or that it was enjoying any advantages from its execution.    If the consideration for it is truly set forth, the president alone had such knowledge.    He was designated to make the mortgage by which the loan was secured ; but the agreement now in controversy did not affect any right of the slate company respecting that obligation ; it was a separate and independent transaction, bearing no legal relation to it except by reference and recital.

.    *    *    *    *    *    *    *    *

*Error assigned* amongst others was decree dismissing the bill.

*W. S. Kirkpatrick*, with him *G. W. Mackey*, for appellant.

*Edward J. Fox*, with him *J. W. Fox*, *H. J. Steele* and *Reeder & Coffin*, for appellees.

PER CURIAM, May 19, 1902:

The finding that the principal defendant, the American Bangor Slate Company of Pennsylvania, neither authorized nor ratified the contract which is the basis of this suit, and therefore was not bound by it, renders unnecessary the discussion of any of the other questions raised. The decree is affirmed on so much of the opinion of the court below as relates to that subject.