Byrne, Appellant, *v.* Dennis et al.

Argued January. 6, 1931. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SADLER, SCHAFFER and MAXEY, JJ.

*Thomas S. Lanard,* with him *Charles A. Rittenhouse, 3d,* for appellant.—Loney was the agent of plaintiff at the inception of the transaction; his agency ceased, appellant contends, when he completed his first fraud, to wit, the deed from Byrne to Dennis, due to his adverse interest in the subject-matter.

A trust ex maleficio can arise only at the inception of the title, from fraud when practiced in obtaining it: Turney v. McKown, 242 Pa. 565.

It seems to be well settled in Pennsylvania that, where one employs an agent to do a specific thing, as, in this case, to take charge of the transfer of real estate, he is bound by all the knowledge the agent has in connection with the transaction: Sergeant v. Ingersoll, 15 Pa. 343; Nat. Bank of Bedford v. Stever, 169 Pa. 574; Chalick v. Weintraub, 90 Pa. Superior Ct. 252.

As between Loney and Fulleborn, Fulleborn is confronted with the fact that his agent had knowledge of the resulting trust in favor of appellant, and therefore was bound to see to the proper application of the purchase money.

A purchaser cannot make payment to a third person who is not properly authorized to receive the same: Kulp v. Markley, 267 Pa. 406; Hopkins v. Phillips, 76 Pa. Superior Ct. 243.

The Eglins cannot participate in the fraud of Loney: Robinson v. Hodgson, 73 Pa. 202; Miron v. Percheck, 279 Pa. 456.

Where a mortgagee hands a check drawn to the order of the mortgagor to a third person without any authority from the mortgagor to so do, and the third person forges the mortgagor's name and collects the check, the mortgagee should not stand the loss: Foley v. Building Assn., 69 Pa. Superior Ct. 213.

It is therefore respectfully submitted that the present assignments of error should be sustained and the decree of the court below be set aside and a decree entered for

appellant against defendant, Fulleborn: Pusic v. Salak, 261 Pa. 512.

*Matthew Randell,* for appellees, with him *Harry F. Felger,* for Ruth Sagen, Meyer Eglin and Benj. Eglin; *John Dolman,* for Mary Loney; *Clinton A. Sowers,* for Paul and Marie Theresa Fulleborn; *Ballard, Spahr, Andrews & Ingersoll,* for Lithuanian B. & L. Assn.; and *Jenkins & Bennett,* for Southwark Title & Trust Co.— When one of two innocent persons must suffer, the one who made possible the commission of the fraud, must be the loser: Vanderslice v. Ins. Co., 13 Pa. Superior Ct. 455; Hertzler v. Nissly, 295 Pa. 62; Building Assn. v. Halpern, 270 Pa. 169.

To visit the principal with constructive notice, it is necessary that the knowledge of the agent or attorney should be gained in the course of the same transaction in which he is employed by his client: Gilkeson v. Thompson, 210 Pa. 355.

The employment by the two Fulleborns of Loney for the purpose of purchasing the premises was entirely separate, independent and distinct from the employment of Loney by plaintiff to sell her property: Bank of Bangor v. Trust Co., 297 Pa. 115; Nat. Union F. Ins. Co. v. Bank, 276 Pa. 222; Frank v. Trust Co., 216 Pa. 40.

OPINION BY MR. JUSTICE KEPHART, February 2, 1931:
Appellant, a widow, employed Loney as an agent to dispose of her real estate. He procured for her a loan on a mortgage from a building and loan association. After she executed the mortgage, he took it to the association and received in return a check payable to her order. He then forged her endorsement on the check, secured the money from the drawee bank, and misappropriated it. To continue to conceal his fraud, he induced appellant to convey the property to a clerk in his office on the representation that he had a purchaser for it.

Later, Loney becoming involved with other clients, Eglins, his clerk transferred the property to such clients' nominee in part liquidation of a defalcation to them. Thereafter his mother, without knowledge of her son's fraud, gave her notes and other obligations to such clients' nominee for the property in reduction of Loney's defalcation. She afterwards conveyed the property, her son acting as agent, to Fulleborns for $6,500. They also had no knowledge of her son's fraud. This sum was distributed among the various persons claiming as lien creditors or as the mother's creditors or others. Part of it went into Loney's hands. A bill was filed by appellant against all persons through whom title to the property had passed, down to and including the Fulleborns. The bill prayed for a reconveyance of the property or an accounting of the purchase price from Fulleborns, with a decree declaring all debts created on account of the property void as to her. The court below dismissed the bill.

It is contended by appellant that Fulleborns and all those who dealt with Loney were affected with knowledge of his fraud. In Hertzler v. Nissly, 295 Pa. 62, 65, we said: "It is true that the principal is bound by the knowledge acquired by the agent in the course of employment......, but not when secured in the course of other independent transactions: Fourth Bleucher B. Assn. v. Halpern, 270 Pa. 169; Gilkeson v. Thompson, 210 Pa. 355; B. & P. Ry. Co. v. American Bangor Slate Co., 203 Pa. 6." However, in Gunster v. Scranton, etc., Co., 181 Pa. 327, 337, 338, we said: "The rule that knowledge or notice on the part of the agent is to be treated as notice to the principal is founded on the duty of the agent to communicate all material information to his principal, and the presumption that he has done so. But legal presumptions ought to be logical inferences from the natural and usual conduct of men under the circumstances...... No agent who is acting in his own antagonistic interest or who is about to commit a fraud by which his principal will be affected does in fact in-

form the latter, and any conclusion drawn from a presumption that he has done so is contrary to all experience of human nature. If it be urged, as in some cases, that the principal having put the agent in his place should, as a matter of public policy, be held answerable for all the latter does, a sound answer is suggested by the court in Allen v. So. Boston R. R., 150 Mass. 200, 206, that an independent fraud committed by an agent on his own account is beyond the scope of his employment, and bears analogy to a tort wilfully committed by a servant for his own purposes, and not as a means of performing the business entrusted to him by his master." See First Nat. Bank v. Bangor Trust Co., 297 Pa. 115, 122. So, while notice to an agent, who, with the consent of both parties, represents each, is notice to either of them as to information acquired in the course of a given transaction within the scope of an agent's authority (Hertzler v. Nissly, supra; Building Assn. v. Halpern, supra; see also Sergeant v. Ingersoll, 15 Pa. 343, 350; Nat. Bank v. Stever, 169 Pa. 574, 581), the facts in this case are not within this principle of law. A principal is not affected with notice, actual or constructive, where the acts complained of consist of independent and unrelated acts outside the usual scope of the agency. The fraud in this case was an independent transaction and a preconceived notion of Loney's,—one that would not naturally occur in the course of the agency,—and his principals were not affected by it unless they had actual or constructive notice thereof, which they did not have. There may be circumstances connected with the sale which would put a purchaser on the duty of inquiry, as gross inadequacy of price, but no such circumstances appear in this case. As Fulleborns now own the property as and through bona fide purchasers for value, without notice, we need not consider the other intermediate title holders. A decree for reconveyance can not be made.

On the question of the distribution of this purchase money we will take up the loan from the association. The mere possession by an agent of notes or other securities evidencing an indebtedness, although a fact to be considered, does not, of itself, confer authority on such agent to receive payment therefor or money thereon: 2 C. J. 623, paragraph 260 (5) (a). So an agent's authority to receive the money advanced on a mortgage is not to be implied from the fact that the agent has the mortgage in his possession. But if the agent has negotiable or other instruments payable to bearer, duly endorsed, or assigned, there is an implied authority for the agent to receive the proceeds: Ibid. Where an agent receives from a mortgagee an assignment of a mortgage to be delivered to the assignee bank to whom he had negotiated its sale, possession and delivery would be sufficient color of authority for the bank to pay the agent the money due on the assignment: Weir v. Washington Trust Co., 263 Pa. 72. Or if an agent represents both parties and was required by his undertaking to perform certain acts for one of them, as paying off prior liens, it is entirely proper for the mortgagee to give a check for the proceeds of the mortgage to such agent: Pepper v. Cairns, 133 Pa. 114. Usually the question turns on whether one of two innocent parties is to suffer, and the one who puts it in the power of the wrongdoer to commit the act which causes loss should bear it. So it is in this case. When the bond and mortgage was presented to the association by the agent, it was authorized to deliver to him a check payable to the mortgagor. He had negotiated the loan and procured the execution of the paper to the association as mortgagee. We need not discuss further the extent of this agent's authority. Authority to receive the check from the association was not authority to endorse it; nor would the above mentioned acts give such agent authority to endorse appellant's name on the check, present it to the bank for payment, and receive the money.

Whether appellant may recover from the association the money unlawfully paid to her agent through the medium of the forged endorsement, we do not decide, but there is no doubt so far as this record shows that she may recover from the bank for a conversion: Louisville, etc., R. R. Co. v. Bank of Pensacola, 74 Fla. 385, 77 So. 104; Robinson v. Bank of Winslow, 42 Ind. App. 350, 85 N. E. 793; Kansas City Casualty Co. v. Wesport Avenue Bank, 191 Mo. App. 287, 177 S. W. 1092; Crisp v. State Bank, 32 N. Dak. 263, 155 N. W. 78; Standard Steam S. Co. v. Corn Exchange Bank, 220 N. Y. 478, 116 N. E. 386. The difficulty with this situation is that the present action does not include the drawee bank. It may have a complete defense that would be for the benefit of the building and loan association. Equity works out justice between all the parties, and to accomplish this it is necessary that all parties who may be affected be made parties of record. Without the bank, complete justice cannot be worked out among those of record. No order should be made that would prejudice the rights of one of the parties against a third person not brought into the litigation. We affirm so much of the decree as applies to the payment to the building and loan association, without prejudice to appellant.

As to the other claims that have been made, they arose through various changes of ownership from appellant down to the Fulleborns, the last purchasers. The agent's mother and the Fulleborns paid actual consideration for the property and the claims arose through these transactions. Payment to the Eglins, the owners of the claims, and to others, was on account of these liabilities. They did not represent antecedent debts. Much as we regret the unfortunate circumstances, we are unable to help the appellant in her claim against the defendants named.

Decree affirmed; costs to be paid by appellant.