## Campbell v. Tracy et al.

*Stace B. McEntee* and *Walter Thomas*, for plaintiff.

*Bunting & Satterthwaite*, for defendants.

BOYER, J., July 2, 1934.—At the trial of this case, the defendant company submitted a point for binding instructions in its favor, which the court refused. The jury rendered a verdict against the defendant, whereupon it filed these motions. The motion for judgment n. o. v. is not seriously pressed. Clearly, the question whether the defendant had notice of the existence of the plaintiff's prior mortgage was a question of fact to be submitted to the jury under all the evidence. We will therefore direct our attention to the motion for a new trial.

In 1915, a house and lot in Doylestown Borough was deeded to Elizabeth Tracy, subject to an existing first mortgage held by one Johnson. In 1921, she executed and delivered a second mortgage to Gertrude B. Campbell, now Gertrude B. Baxter by marriage, plaintiff herein. This mortgage was executed under the name of "M. Elizabeth Tracy." In 1927, Elizabeth Tracy executed and delivered a third mortgage to one Lizzie Hartman. In 1928, she executed and delivered a fourth mortgage to the defendant, Huntingdon Valley Building & Loan Association. All Elizabeth Tracy's mortgages, except the one to the plaintiff, were executed in the name of Elizabeth Tracy, which is the same as the name under which she took title by her deed. In 1931, Huntingdon Valley Building & Loan Association foreclosed its mortgage and bought the property in its own name at the sheriff's sale. In 1932, the plaintiff issued this sci. fa. sur mortgage, making the mortgagor, together with the building and loan association as real owner, defendants. The building and loan association appeared to the writ and defended on the ground that the plaintiff's mortgage was executed and recorded and indexed under a name different from that of the deed by which the mortgagor acquired title, and that consequently it had no notice of the existence of the plaintiff's prior mortgage, by reason of its erroneous name and indexing. The plaintiff replied that while the building and loan association did not have legal record notice, it had actual notice of the existence of the plaintiff's prior mortgage lien through its attorney, one Wynne James. This question of actual notice was submitted to the jury upon full instructions as to the facts and circumstances disclosed by the evidence from which they might find that the defendant's attorney had actual notice at the time and immediately before the defendant association took its mortgage. The defendant admitted that Wynne James was its solicitor for the purpose of investigating and report-

ing upon the condition of the title to the mortgaged premises. It admitted that he made a false certificate as to prior liens on the property. They contended, however, that any knowledge which its attorney may previously have had or acquired outside the course of the same transaction was not binding upon his client, the building and loan association; and second, that by reason of his fraudulent transactions in this, as well as previous matters, his interests were so antagonistic to those of the defendant that he could not be expected honestly to report his personal knowledge to his principal, and that therefore his principal was not bound by such personal knowledge on the part of the agent. The court instructed the jury in substance that if they found that, at the time Wynne James presented the application for a loan to his company and at the time he made a title search and certified thereto, he had actual knowledge of the existence of another prior mortgage, then his knowledge was the knowledge of his principal, the defendant, regardless of whether he communicated that knowledge to it or not and regardless of whether he withheld his knowledge dishonestly for the purpose of furthering an independent fraud. The defendant claims that this part of the charge was erroneous and that a new trial should be granted for that reason.

The evidence was overwhelmingly to the effect that the defendant's attorney had full and positive knowledge of the existence of the plaintiff's mortgage as a prior lien at the time and immediately before the defendant took its mortgage on the premises. The first question therefore is whether he acquired such knowledge within the scope of his employment or in the course of the same transaction. It is true that it cannot be said that he acquired his first knowledge of plaintiff's mortgage in the course of this transaction, for it is undisputed that he had actual knowledge and possession of the plaintiff's mortgage for many years prior thereto. However, the testimony clearly shows that his recollection was refreshed and that the matter was sharply called to his attention during and in relation to his employment by the defendant for the purpose of ascertaining whether there were prior mortgages on the premises. Not only was his attention called to it during this transaction, but he actually gave this mortgage consideration with relation to this transaction and its effect upon his client, the building and loan association. This is shown by the testimony of the plaintiff's husband, who stated that he discussed the matter of the plaintiff's mortgage with the defendant's attorney and was assured by him that they need not worry about their mortgage, that ". . . he said the mortgage was so good that another building and loan association was going to take another mortgage in there . . .", that is, another mortgage on the same place. This statement of the attorney clearly shows not only a knowledge of the existence of the mortgage during this transaction but an actual consideration of it with relation to the respective liens of the two mortgages and the effect of the one upon the other. In our opinion, this knowledge and refreshed recollection, as well as consideration of it with relation to his duties as agent and attorney for the defendant in this transaction, clearly brings it within the "course of the transaction and scope of his employment." The defendant's attorney was employed by it for the specific purpose of securing knowledge and information as to the condition of the title to the premises in question and for the purpose of reporting such knowledge to his client. It cannot be assumed that when the defendant employed him as its solicitor, in general or in this particular case, it employed him solely for the purpose of examining records without any regard whatsoever to any other information which he might have or acquire affecting

the security of its liens. He had held the office of solicitor for the defendant for many years. It was of no consequence to the defendant how, when, or where its attorney secured his knowledge, so long as he acted to the best interest of his client and faithfully reported all the knowledge he had on the subject. This he must be presumed to have done, and for that reason the defendant is chargeable with this knowledge. His knowledge was their knowledge.

The second question is whether Wynne James, at the time of his employment by the defendant and his report to it on the condition of the title to the premises in question, was committing an independent fraudulent act, the communication of which to his principal would prevent its consummation. If he was, then his knowledge was not the knowledge of the defendant. We are of the opinion that in this respect the court erred in charging the jury as a general proposition of law that any fraud perpetrated or contemplated by the defendant's attorney with relation to this transaction was immaterial: Byrne v. Dennis et al., 303 Pa. 72. It was stated too broadly. If there had been evidence sufficient to support a finding by the jury that Wynne James was committing a fraud for his own benefit, which would have been defeated by his making an honest report to his client, we would feel obliged to set aside the verdict and grant a new trial. However, we find no evidence upon which such a conclusion could be based. The evidence amounts to nothing more than the merest inference, raising a suspicion of dishonesty. All that the evidence shows along this line is that Wynne James in other and prior transactions defrauded his client, the defendant. This could do nothing more than prove that he was a dishonest man, and proved nothing as to this particular transaction. The only evidence which might reflect on his conduct in this particular transaction is his failure to report the plaintiff's mortgage and another mortgage held by Lizzie Hartman, together with the fact that one officer of the defendant testified that he did not know anything about the mortgagor. But there was no evidence as to her non-existence or as to any efforts made by him or other persons to discover her identity or whereabouts. There is not the slightest evidence that Wynne James ever dishonestly received so much as a dollar out of the loan made by the defendant on its mortgage. Therefore, there being not even a scintilla of evidence that the defendant's agent was committing an independent fraudulent act by reason of which he suppressed the information, the erroneous charge of the court that such fraud was immaterial was harmless. Had the court charged the jury correctly on the general principle of law, it would have been compelled further to instruct them that, notwithstanding that being the law, there was no evidence in the case from which they could find such fraud.

There is a surprising dearth of authority on the question when and to what extent a client is chargeable with the knowledge of his attorney under circumstances similar to these. The cases most nearly parallel to which counsel have called our attention are Mutual Building & Loan Association's Case, 19 C. C. 504, and Armstrong, Receiver, v. Ashley, 204 U. S. 272. We quote from the opinion of Mr. Justice Peckham, who delivered the opinion of the United States Supreme Court in the latter case (p. 283) : "The knowledge of the attorney and of the president of the board in regard to a matter coming within the sphere of their duty, and acquired while acting in regard to the same, and sending to the company in New Orleans their report which it was their duty to make, must be imputed to the company."

It is interesting to note that in the above case the knowledge of the attorney was imputed to his client, a building and loan association, notwithstanding the

fact that he was admittedly perpetrating a fraud on his client for his own benefit throughout the transaction. The same is true in Mutual Building & Loan Association's Case, supra. However, the absence of proof of fraud in this case makes it unnecessary to base our opinion on those decisions.

Now, July 2, 1934, the motion for judgment n. o. v. is dismissed. The motion for a new trial is dismissed and a new trial refused.

From Isaac Vanartsdalen, Doylestown, Pa.