## Leschinski v. W. C. Hack & Sons. No. 1

*John L. Pipa, Jr.*, for plaintiff.
*Harold F. Bonno*, for defendant.

MORGANROTH, P. J., December 21, 1942.—Plaintiff filed action in assumpsit against the defendant corporation wherein he claims payment for 68 shares of defendant's common stock at its fair book value of $130 per share.

The material facts averred in plaintiff's statement of claim are as follows: Plaintiff was employed by defendant corporation as general manager of its hardware store from the date of its incorporation on August 13, 1926, until March 25, 1939. During the course of plaintiff's employment the majority of the stockholders, the officers, and the board of directors of the corporation orally requested plaintiff to purchase common stock, which plaintiff did purchase on condition and in consideration that the defendant corporation would repurchase the same from plaintiff in the event of his leaving defendant's employ, or in the event of his death, at the then fair book value. In 1930 and 1932 plaintiff purchased a total of 68 shares of defendant's common stock.

On December 20, 1932, the said corporation, at the request of plaintiff to confirm the previous oral agreement, agreed, in writing, to purchase plaintiff's holdings, as follows:

"Shamokin, Pa., December 20, 1932.

"It is hereby agreed by the majority stockholders in the firm of W. C. Hack & Sons of Mt. Carmel that we will purchase the holdings of Peter Leschinski, at fair book value, in the event of his leaving our employ or in the event of his death.

(Signed) W. C. Hack & Sons of Mt. Carmel
(Signed) Peter Leschinski        A. G. Hack, President"

Plaintiff severed his relations with defendant corporation and left its employ on March 25, 1939. The fair book value of each share of common stock of defendant on that day was $130. Repeated demand has been made by plaintiff of defendant corporation to repurchase the said 68 shares of stock at fair book value, which demand has at all times been refused.

Defendant filed an affidavit of defense in lieu of a demurrer and contends that plaintiff's statement of claim is insufficient for the following reasons:

That the statement does not disclose any claims against defendant upon which a judgment can be legally entered in favor of plaintiff.

That the statement avers there was an oral understanding between plaintiff on the one part, and a majority of stockholders, officers, and board of directors on the other part, and then avers that the said oral understanding or agreement was reduced to writing to confirm the previous oral agreement; that the written agreement thereby became the whole agreement, and that the said written agreement upon which plaintiff's action is based discloses on its face that no liability whatever attaches to defendant by reason thereof; that there is no allegation in plaintiff's statement of claim of any agreement entered into between plaintiff and the defendant corporation upon which plaintiff would be entitled to judgment.

The issue here is whether or not plaintiff's statement of claim discloses a good cause of action. The agreement of the corporation signed by its president may or may not be binding on the corporation as the proofs develop at trial.

Parties who deal with officers of a corporation are bound to take note and advise themselves of the extent of their powers to act for the company: Deliman v. Greek Catholic Union, 275 Pa. 571. This power may be implied where the transaction undertaken is within

the line of ordinary duties imposed on such individual (Stilley v. McNeal, 219 Pa. 533), even though there be some unknown corporate bylaw to the contrary (Act of May 12, 1925, P. L. 615), but there can be no liability imposed when the act performed is beyond the scope of usual duties allotted: First National Bank of Allentown v. Hoch, 89 Pa. 324; Bangor & Portland Ry. Co. v. American Bangor Slate Co. of Pennsylvania, 203 Pa. 6. To affect the company, the authorization must be plainly shown to exist, either by the minutes of the corporation, or by proof of other acts and circumstances from which a legal implication of power to bind it follows: Turner v. Baker, 225 Pa. 359; Gross v. Kincaid, 83 Pa. Superior Ct. 514. Where the evidence is undisputed, the trial court must determine its extent as a matter of law: Humphrey et ux. v. Brown et ux., 291 Pa. 53; Kelly, Murray, Inc., v. Lansdowne Bank & Trust Co., 299 Pa. 236, 241.

Defendant contends that A. G. Hack, president of the corporation, agreed to repurchase the stock held by plaintiff without the consent of the other stockholders or directors, and that although he may have, at the time of the transaction, held the majority of the stock yet "the owner of all or the majority of the shares of a corporation cannot, without more, dictate the policy of a corporation": Green et al. v. Philadelphia Inquirer Co. et al., 329 Pa. 169, 176. This proposition is properly a matter of defense on the merits of the action.

The president of a corporation has authority to act within the scope of his official duties, whether such duties are expressly delegated to him by the bylaws of the corporation or whether by long custom and usage he has performed such duties and his action has been ratified by the corporation stockholders or directors. In such a case as this the burden is on plaintiff to prove that the contract was executed in the name of the corporation by the president, within the scope of his powers

and duties: American Car & Foundry Co. v. Alexandria Water Co., 218 Pa. 542.

In Landis v. Brick & Tile Co., Inc., 87 Pa. Superior Ct. 398, an action to recover for the breach of a written contract of employment, executed by the president of defendant corporation, the case was for the jury. The defense that the president was not authorized to enter into a contract and that the contract was not formally ratified by the board of directors is insufficient where the full and absolute management of the corporation was turned over to the president.

Where the stockholders and directors turn over to an officer the full and absolute management of all corporation affairs, and permit him to exercise unrestrained control for a long course of time without instruction from, or reference to, any other authority, prima facie, the officer so entrusted may be taken to have power to do any act which the directors could authorize or ratify: Chestnut Street Trust & Savings Fund Co., to use, v. Record Publishing Co., 227 Pa. 235, followed in C. L. McClain Fuel Corp., to use, v. Lineinger, 341 Pa. 364.

In Bowman v. Press Publishing Co., 316 Pa. 531, it was held that the apparent scope of the circulation manager's authority to bind his employer was a question of fact under the particular circumstances of the case. The fact and scope of agency are for the jury, where they are to be established by parol evidence and surrounding circumstances.

Defendant's position that plaintiff must rely on proof of the written contract rather than on the oral agreement with a majority of the stockholders, the officers, and the board of directors of the corporation as pleaded in paragraph 4 is well taken.

Where parties without any fraud or mistake have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement: Martin et al. v.

Berens, 67 Pa. 459, 463; Irvin v. Irvin, 142 Pa. 271, 287. All preliminary negotiations, conversations, and verbal agreements are merged in and superseded by the subsequent written contract and, unless fraud, accident, or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence: Union Storage Co., for use, v. Speck, etc., 194 Pa. 126, 133; Vito v. Birkel, 209 Pa. 206, 208; Gianni v. R. Russell & Co., Inc., 281 Pa. 320, 323.

However, in meeting his burden of proof that the president of the defendant corporation was duly authorized to enter into the contract as pleaded, plaintiff may show any resolution of the corporation authorizing the execution of the contract or a valid ratification of the act of its president by the stockholders and directors.

Nor does the word "we" in the written agreement designate any other than the corporation itself. It is well recognized that the words "we" and "our" are often used in the body of corporate contracts in referring to a corporation as a collection of individuals: Kennedy & Parsons Co. v. Lander Dairy & Produce Co. et al., 51 A. L. R. 315; 7 R. C. L. 497.

The crux of this case is the authority of the president of the defendant corporation to enter into the contract, and plaintiff must assume the burden of proof of the president's authority on the trial of the cause. Plaintiff has pleaded a good cause of action when he sets forth a written contract of the corporation signed by its president, and especially, as in this case, where it is averred that the majority of the stockholders had knowledge of the agreement.

And now, December 21, 1942, for the reasons hereinabove given, the affidavit of defense in lieu of demurrer is dismissed, with leave to defendant to file its affidavit of defense to the merits of the case within 15 days after notice of the filing of this opinion.