DENT *v*. PEOPLES BANK OF IMBODEN.

Opinion delivered April 12, 1915.

1.  BANKS AND BANKING—EMPLOYMENT OF ATTORNEY—AUTHORITY OF PRESIDENT.—The president of a bank has authority to take charge of the litigation of the bank, to institute, carry on, and defend legal proceedings and for the accomplishment of these purposes may retain and employ counsel on behalf of the bank, but this authority does not extend to the right to employ counsel by the year.

2.  BANKS AND BANKING—EMPLOYMENT OF ATTORNEY—AUTHORITY OF PRESIDENT.—In the matter of the employment of an attorney for a bank, by the year, the president or other officers of the bank can not act without authority from the board of directors.

3.  BANKS AND BANKING—EMPLOYMENT OF ATTORNEY.—While a bank must pay an attorney a reasonable compensation for the conduct of any litigation of which it received the benefit, without regard to whether there was a contract of employment or not, and also must pay a reasonable fee for services rendered under a contract of employment made with the president, the bank is nevertheless not bound by a contract made with said attorney by the president for services by the year, unless such contract is ratified by the directors.

Appeal from Lawrence Circuit Court; *H. L. Ponder,* Special Judge; affirmed.

STATEMENT BY THE COURT.

G. G. Dent, an attorney at law, brought suit against the Peoples Bank of Imboden for the recovery of $1,440, claimed as compensation upon a contract for a yearly retainer for twelve years' service as attorney for the bank, and $1,550 as damages for breach of the contract alleged to have been made with him by the bank, to pay him for attending to all lawsuits brought by or against the bank or for collections coming through it.

He alleged an oral contract of employment by W. C. Sloan, president of the bank, from its organization in 1905 until the filing of the suit on January 2, 1910, and that from time to time prior to 1908 he was consulted by the bank, its officers and employees and rendered valuable service in giving advice, etc., other than in the institution and conduct of litigation, for which he was to be paid fees to be fixed by agreement.

The second count of the complaint alleged that by the contract of employment, he was to attend to all litigation of and for the bank, and that he had held himself in readiness at all times to perform the service and carry out the contract, but that the bank had instituted various suits and employed other attorneys in the conduct of the litigation to his damage in the sum of $1,500. This count was stricken out upon motion of appellant.

The answer denied any agreement to retain the plaintiff at a salary of $120 a year, or any other amount, and alleged that the bank made an arrangement with him providing when it needed the services of an attorney in litigation from time to time it would give him such business and pay him for whatever services he rendered; that it used him as attorney from time to time and paid him for each service when completed; plead the three-year statute of limitations, and denied that it employed the plaintiff to represent it in all litigation, and plead the statute of frauds, the alleged contract not being one to be performed within a year.

The plaintiff testified that after the bank was organized, he talked with two or three of the stockholders about

the attorneyship, with several of the directors, "and finally had a conversation with W. C. Sloan, the president of the bank and principal owner of its stock. He told him he would like to become the bank's attorney and Captain Sloan replied that he could consider himself the attorney of the bank. Nothing was said about any pay, but from the conversation he, witness, was to attend to any suits the bank had, that is, suits for or against the bank, for which he was to be paid. There was nothing said about how long the employment was to continue. He knew that Captain Sloan was president of the bank, and virtually the owner, having a majority of the stock—he and his children—that he generally attended to the business of the bank—"whatever he said went in a business way." That the then cashier, as well as the one who succeeded him relied on the judgment of Captain Sloan in all business matters, and that nobody ever objected to what he did and all acquiesced in his actions; that from time to time independent of specific lawsuits, he was called upon for advice by the cashier of the bank in consultation about its affairs and rendered services proper and necessary under the law, for which he had never been paid; that he rendered such services beginning with the organization of the bank and continuing until it closed in 1908. He held himself out as the attorney of the bank during this time. * * * Said he was not claiming under an express, but an implied, contract, his contention being that no specific amount was agreed upon, that he was the regular retained attorney for the bank, was consulted about its business from time to time, held himself in readiness at all times to answer all questions and inquiries made, and he could not say how many times he was consulted but very often. That $120 a year was a reasonable compensation for the services for which he had never received any compensation; that he always intended to charge for such services, and felt himself disqualified from taking any business against the bank. He did not claim to have had any contract of employment with the board of directors, or any one else except with Captain

Sloan, the president of the bank, as already stated, nor did he tell any member of the board of directors that he was the regular retained attorney of the bank by the year, for he knew he was the bank's attorney, and did not think of how much he was to be paid.

He said on cross-examination that he never intimated to anybody that he was retained by the bank as attorney by the year, nor that he expected a compensation of $120 yearly, but that he never dreamed of it being questioned that he was the bank's attorney. He made no claim of the bank being due him any amount for services as attorney until after it went into the hands of a receiver, and he was notified to pay up his indebtedness to the bank; he then claimed he notified the officers of the bank that he had an account against the bank far in excess of his overdraft, and said, "I was sued by the bank after I had gone and told them, I did not owe anything, and when they commenced suit against me, I remembered these services."

Another attorney testified that he knew the value of the services claimed to have been rendered by plaintiff, and that $10 or $15 a month would be a reasonable retainer, "and when an individual has considerable business and employs me in whatever business he has, I ordinarily consider advice and consultations as gratuities." "The general custom is, so far as I know it among lawyers, that a retainer is not considered to be due unless there is a special contract for it," and to the question, "If the Peoples Bank were to say to you that you might consider yourself their attorney, would you take that to mean that they would pay you a salary by the year?" Answer: "Ordinarily, without more was said than that, I would consider that they expected to employ me in whatever business they had and pay me the customary fees for attending to it. I think that is the custom among attorneys, so far as I know it in this locality."

Homer Sloan, cashier, testified that whatever his father, the president, did, usually met with the approval of the directors. Whatever legal business we had we gave it

to Mr. Dent, and I suppose you would consider that we made him the attorney for the bank. We had so little legal business that we had little use for an attorney; whatever we had, however, was turned over to Mr. Dent. I attended most of the directors' meetings, never heard of Mr. Dent being the attorney for the bank at a yearly salary or being retained by the year, and meant when I said he was its attorney that whenever we needed an attorney in litigation, we gave the business to Mr. Dent and paid him for such lawsuits as he attended to. He made the bank his headquarters when he was in town, and I asked him questions when he was there and wanted advice, thinking I had the right to do so, because the bank gave him whatever legal business it had.

C. C. Bacon testified that Homer Sloan, the cashier, told him if he had occasion to use an attorney to use Mr. G. G. Dent. "I did not make any contract with Mr. Dent at all while I was cashier or assistant, but used him in that capacity for certain cases."

Two others testified they had been vice presidents of the bank for some years, attended most of the meetings of the directors, and had never heard of Dent's being employed or retained as attorney for the bank.

Doctor Warren stated that he had talked with Dent in 1901 and asked him how much salary the bank paid him as attorney, and he replied that he was the regular attorney of the bank, but that he did not get a salary, but was to attend to the cases of the bank and was to get paid for his services in that way.

The court instructed the jury, amending and giving, over plaintiff's objections, requests numbered 1 and 3, by adding a proviso, the instructions given being as follows:

"No. 1. If you find from the evidence in this case that W. C. Sloan, while acting as president of the Peoples Bank, employed the plaintiff, Geo. G. Dent, as its attorney, and that under such employment, the said Dent performed services for the said bank or held himself in readiness at all times to advise, consult or otherwise serve

the bank being its regular attorney, for which service he has not been paid, you will be warranted in finding for the plaintiff, in such an amount as the proof in the case shows his services to be reasonably worth. Provided, that you further find that the employment of the plaintiff and services rendered were known to the directors of the defendant bank, and were accepted by them, and they acquiesced in said employment by Sloan and ratified the same.

"No. 3. You are further instructed that if you find from the evidence in this case that the plaintiff Dent, as an attorney at law, performed services, such as giving advice about the business of the bank during the period of years as alleged in the complaint in this case; that he refrained from taking cases against the bank, and always held himself in readiness to serve the bank when called upon by its cashier or other officers, and that the services rendered were at the solicitation of the cashier and other officers of the bank; that such services have never been paid for, then in that event you will be warranted in finding for the plaintiff in such an amount as the proof shows such services to be reasonably worth. Provided, that you further find that the employment of the plaintiff and services rendered were known to the directors of the defendant bank, and were accepted by them, and they acquiesced in said employment by Sloan and ratified the same."

The jury returned a verdict for the bank, and from the judgment plaintiff brings this appeal.

*R. E. L. Johnson,* for appellant.

1. The president of a banking corporation has power to employ an attorney for the bank without specific delegation of such authority from the board of directors. 10 Cyc. 904; 53 Kan. 696, 37 Pac. 131; 9 Paige 406, 38 Am. Dec. 561; 5 Denio 355; 33 Cal. 183; 45 Mo. 419; 51 Mo. 501; 61 Mo. 89; 23 Pa. Super. Ct. 138; 64 N. J. L. 497, 46 Atl. 168; 18 Tex. Civ. App. 176, 44 S. W. 875; 2 Ga. App. 746, 59 S. E. 10; 4 Thompson on Corp., 536.

The court, therefore, erred in adding the proviso to instructions 1 and 3, requested by appellant.

2.   The board of directors, by its silence, impliedly, ratified the appointment of appellant as attorney for the bank by the president, even if he exceeded his authority in so doing.   There is no evidence that the board repudiated the act or chose other counsel for the bank, but there is evidence that the directors had knowledge that appellant was attorney under authority from the president. Clark on Corporations, 500; *Id.* 498; 103 Ark. 283; 146 S. W. 508; 48 N. J. L. 513, 7 Atl. 318; 28 N. E. 245; 104 U. S. 192; 78 Ark. 483, 95 S. W. 802; 86 Ark. 287, 110 S. W. 1039; 89 Ark. 435, 117 S. W. 232; 61 N. Y. St. 817; 151 Ill. 444, 38 N. E. 140; 121 Ala. 505, 25 So. 612; 10 Cyc. 1073; 131 U. S. 371, 33 Law Ed. 157.

3.   Appellant was entitled to recover such an amount as would reasonably compensate him for the services rendered.   It is a settled principle that where an attorney renders valuable services to one who has received the benefit thereof, a promise to pay their reasonable value is presumed, unless the circumstances show that such services were intended to be gratuitous.   2 R. C. L., § 130, p. 1048; 166 Mo. 28.   See, also 66 Ark. 190; 3 R. C. L., § 128, p. 1046; 98 Pac. 911, 19 L. R. A. (N. S.) 961, note; 27 Wis. 238: *Id.* 281; 17 Pac. 464; 77 N. E. 762; 97 Ill. App. 374; 54 N. Y. 76; 35 Minn. 124.

*Rose, Hemingway, Cantrell, Loughborough & Miles,* for appellee.

1.   Plaintiff is barred by the statute of limitations, he having brought suit on January 18, 1913 for services which terminated in 1908.

2.   The president had no power to make the alleged contract.   89 Ark. 173; 1 Morowitz on Corporations, § 537; 2 Cook on Corporations, 716; 10 Cyc. 903; 53 Pac. 634, 121 Cal. 202.

3.   The evidence does not show that Sloan, the president, reported his action to the board of directors.   All the members who testified say they had never heard of plaintiff's employment, and that it was never reported to the directors.   There can be no ratification without knowl-

edge. 11 Ark. 189; 88 Ark. 64; 64 Ark. 217; 76 Ark. 472; 103 Ark. 283; 105 Ark. 506.

KIRBY, J., (after stating the facts). (1) It is strongly urged that the court erred in refusing the instructions as requested, and in giving said instructions as amended. The president of a bank has authority to take charge of the litigation of the bank, to institute, carry on, and defend legal proceedings, and for the accomplishment of these purposes, may retain and employ counsel on behalf of the bank. 1 Mitchie Banks & Banking, 704; Boone on Banking, § 144; Bolles National Bank Act, 89; 3 R. C. L. 442; 10 Cyc. 904; *Citizens Natl. Bank* v. *Berry*, 53 Kan. 696, 37 Pac. 131.

In the Kansas case, the court said: ''The president of a banking corporation has power to employ counsel and manage the litigation of the bank in the absence of any order of the board of directors depriving him of such powers.'' The authorities do not reach to the extent, however, of holding that the president of a bank is authorized to make a contract of employment retaining the services of an attorney by the year, for consultations and advice. The business of a bank and other corporations is under the care of and managed by its board of directors, and the president, as a rule, has no greater powers by virtue of his office merely, except he is presiding officer at the meetings of the board, than any other director of the company. Kirby's Dig., § § 841-843; 1 Morowitz on Corporations, § 537; 10 Cyc. 903; 3 Cook on Corporations, § 716.

(2) The employment of an attorney upon a yearly retainer is a matter of moment to the corporation, and there is usually no such haste required about it as would prevent the matter being considered and passed upon by the board of directors, and although the authority of the president of the bank in this instance to make the contract might have been implied from the usual course of business of the bank, the president having been allowed to manage and control its affairs largely, the instruction offered did not submit the question of his implied au-

thority to the jury and permit them to draw the inference that he had such authority, and was erroneous as requested in telling the jury that if the contract was made by the president of the bank, and the services performed, they would be warranted in finding for the plaintiff. The requested instruction numbered 1 being erroneous, in assuming that the president had authority to make the contract and bind the bank, the court tacked on the amendment to correct the error and directed the jury that such a contract made with the president would be valid in effect if ratified by the board of directors.

(3) Neither did the court err in giving instruction numbered 3, which, as requested, assumed that the cashier or other officers of the bank had authority to bind it to the payment under an alleged contract of yearly retainer for an attorney's services, other than attending to its litigation, in giving advice about the business of the bank in refraining from taking cases against it, and holding himself in readiness to serve the bank. These officers, as such, had less authority than the president of the bank in that regard, and the amendment to the instruction added by the court did but tell the jury that the bank would be bound to pay a reasonable compensation for such service only if the employment was ratified by the board of directors. Of course, the bank would have been bound to the payment of a reasonable fee to the attorney, for the conduct of any litigation of which it received the benefit without regard to whether there was a contract of employment or not, and also to the payment of a reasonable compensation for his service in attending to any litigation of the bank upon a contract of employment made with its president, but each of the instructions, as requested, assumed that the president of the bank or the officers consulting the attorney, had the authority to retain the attorney by the year and bind the bank to the payment of a reasonable compensation for consultations with and advice from him in the conduct of the bank's affairs and the court's amendment directing that they could not find in his favor unless the contract of employ-

ment was ratified by the directors of the bank, was but a correction of the instructions in accordance with the law, and no error was committed in giving them as amended.

As already said, the court could have submitted the question of the president's or the cashier's implied authority, to make the contract with the attorney upon the testimony relating to the course of conduct of this bank's affairs, but appellant did not request an instruction of this kind, and the court did not err in its attempt to correct the requested instructions by the amendment without including the submission of this question in the same instruction.

The views already expressed render it unnecessary to pass upon the question of waiver of the plea of the statute of limitations.

Finding no prejudicial error in the record, the judgment is affirmed.