## First National Bank of Seward v. Souders.

*Graham, Yost & Meyers*, for plaintiff; *Alvin Sherbine*, for defendant.

McCANN, J., October 6, 1930.—This is a petition on the part of J. J. Souders, the defendant in the above-entitled case, to have a judgment opened and the defendant let into a defense. Briefly, the facts in the case are as follows:

On June 26, 1925, J. J. Souders, the defendant, executed and delivered a note to the First National Bank of Seward, Pennsylvania, in the amount of $250, payable two months after date at said First National Bank of Seward, Pennsylvania. The note was endorsed by H. C. Cook, who at that time was president of the bank. This note was a renewal of a previous obligation, the original note having been given to the bank as consideration for a loan made by the bank to Souders. Judgment was entered on the note March 21, 1928,

and thereafter the defendant presented his petition for this rule, setting up payment to H. C. Cook, president of the said plaintiff bank.

In his testimony, Souders related that the note had been renewed from time to time; that during the summer of 1925 he had furnished mine props and timber to the various coal companies in which Cook was interested, to wit, the Conemaugh Coal Mining Company and its constituent companies; that these coal companies owed him, Souders, in the neighborhood of $800, and that he called at the office of the company in the Lutheran Building in the City of Johnstown to secure a settlement; that at the settlement, which was conducted by Cook on behalf of the coal companies, Cook told Souders that the First National Bank of Seward, Pennsylvania, did not want to renew his note further, and inquired whether he could take care of it at that time; that as to this, Souders assented, and it was thereafter agreed that instead of Souders receiving from the coal companies the full amount due him, the amount of this note should be deducted, and Cook agreed to take care of the note at the Seward bank because of this deduction; that, accordingly, Souders received a check for $550 and Cook agreed to pay the note at the bank and return the note to Souders. It was testified that Cook called one of his employees, G. J. Cochran, who testified that Cook told him to deduct $250 from the amount which the coal companies owed to Souders and charge it to his, Cook's, account on the books of the coal companies and that he would take care of it at the bank. It further appeared that Cook was in the habit of conducting business for the bank at his office in the Lutheran Building in the City of Johnstown; that renewals of notes were sometimes taken there; that deposits were given to Cook or to his employees to be deposited in the First National Bank of Seward, Pennsylvania; and that the petitioner, considered that he was doing business in a branch office of the bank. There was nothing, however, to indicate that the offices were a branch of the bank, but these were the coal company offices. It appeared, however, that many deposits were made there and carried by the employees of the coal company to the Seward bank.

The sole question in this case is whether payment to the president of a bank, who fails to turn the money over to the bank, is payment to the bank. After careful consideration by all members of the court, we are of the opinion that this is not payment to the bank. While Cook was a director as well as president of the bank, he had no additional powers by reason of the fact that he was their president. He merely presided at the meetings of the board of directors and had no greater power by virtue of his office than any other director: Dent *v.* Peoples Bank, 118 Ark. 157, 175 S. W. 1154, 1 A. L. R. 688.

Ordinarily, the cashier of a bank is its managing officer and the powers of the president as such are very limited, save as conferred on him by the board of directors: 3 R. C. L. 440.

This was a transaction personally with Cook himself, in that the payment involved money due to Souders from Cook's coal companies. The note called for payment at the First National Bank of Seward, Pennsylvania, and the medium of payment called for by the note was cash. The bank received no consideration in this transaction whatever. The fraud practiced upon the defendant was practiced by an officer of the bank, not by the bank. The bank may be chargeable with knowledge acquired by its officers pertaining to the scope of its business, but this rule does not apply when the officers of the bank are acting personally and for their own interests, for in such case it will not be presumed that they informed their principal of the facts which it was harmful for them to disclose: First National Bank of Bangor *v.* Bangor Trust Co., 297 Pa. 115, 122. It follows that while a bank is bound by

70

the acts of its agent within the apparent scope of his authority, this rule does not apply when the agent is acting personally and for his own interest and the person seeking to hold the bank responsible for the agent's acts has notice of the personal interest of the agent in the particular transaction involved. In 1 A. L. R. 699 (note), it is said, "The president of a bank may not without express authority bind the bank by an agreement in which he has an adverse interest."

Souders relied upon Cook, an officer of the bank, to pay off the obligation to the bank. It was between Cook and Souders. Souders really had paid the money to Cook, but this grew out of a transaction between Souders and Cook's coal companies, and Souders had to take his chances on Cook's paying the money at the bank. Under the Act of Congress creating and providing for the establishing of national banks and their branches, no place of discount and deposit more than thirty miles distant from the parent bank is valid unless approved by the Comptroller of Currency: First National Bank of Capitol Hill v. Murray, 212 Fed. 140.

There are numerous other cases cited in the able brief of counsel for the First National Bank of Seward, Pennsylvania, which, upon examination, fully sustain the position of the bank. While it is regrettable that Mr. Souders, who really believed he was paying this money to the bank, has to sustain the loss, yet it is necessary that the principles of banking and the necessity for strict compliance with the law thereof be maintained, and while it is very unfortunate that the petitioner must suffer as a result of a wrong perpetrated upon him, the court is powerless to help him.

We, therefore, must discharge the rule.

*Decree.*

And now, October 6, 1930, after due consideration, rule to open judgment in the above-entitled case is discharged.

From Henry W. Storey, Jr., Johnstown, Pa.